## A. B. EASLEY V. E. C. McCLINTON AND OTHERS.

1. Courts of probate being of special and limited jurisdiction, and created by local laws, there is no presumption of law to sustain their judgments and decrees, and their records must show an explicit and special finding of all material facts necessary to their jurisdiction and to the validity of their findings.

2. In a suit in our courts upon a judgment of another State, rendered in an action *in personam*, the defendant may prove that in such action no process was served upon him, notwithstanding that the record shows proper process duly returned " executed " upon him ; and if such proof be made by the defendant, the suit cannot be maintained. (Norwood v. Cobb, 15 Texas, 500, cited and approved.)

3. If the record of a judgment shows that it was rendered without service of process and without an appearance of the defendant, or if that fact can be shown without contradicting the recitals of the record, the judgment will be treated as void in any other State, notwithstanding the constitutional provision respecting the faith and credit to be given to the judgments of the several States.

4. The record of a void judgment cannot be made to serve as evidence of collateral facts, for such a record does not import verity.

5. When a party is to be pursued in this State for defalcation, or waste of an estate administered by him in some other State, the proper course is to institute suit on his bond, alleging breach and all necessary facts—upon proving which there need be no difficulty in recovering judgment. But a judgment of a probate court of the other State, rendered against him upon publication only, will not suffice either as a cause of action, or as evidence of the breach of his bond.

APPEAL from Grimes.   Tried below before the Hon. Nat. Hart
Davis.

The opinion of the court discloses the material facts.

*H. H. Boone* and *Ballinger, Jack & Mott,* for the appellant.

*Baker & Maxcy,* for the appellees.—It is submitted that while
the whole record of the Probate Court of Alabama is made, by
exhibits, a part of the appellees' pleadings, yet the real and sub-
stantial cause of action is the administrator's bond; and the record
furnishes evidence of the execution of the bond, the breach, and
*devastavit,* for which all the obligors are liable, and the liability
having been ascertained by the forum of the place, they are bound
by it, in the mode and to the extent of the breach so ascertained.

It is contended that the proceedings in the Probate Court of
Marengo county, Alabama, so far as they affect the liability of the
appellant, as one of the obligors on the bond of B. A. Easley, as
administrator of the estate of R. P. McClinton, is, as to him,
*coram non judice,* and void, because the record does not show
that he was personally served with process.

The general rule upon this subject is, that a judgment pro-
nounced against a party in actions *in personam,* without service
of process in some mode prescribed by law, is of no binding force.
This rule, however, is not without exceptions.   It is insisted by
the appellant that, in the proceedings in the Probate Court in
Alabama, a judgment was rendered against him without notice,
and therefore he is not bound by it.   If this be conceded for the
purpose of argument, it is not perceived that it strengthens his
position; because no formal judgment was rendered against him,
other than a statutory judgment, which, under the laws of Ala-
bama, was incident to, and consequent upon, his bond, upon con-
tingencies which are shown to have happened; and because, further,
if it were technically a judgment, it was pronounced by a court of

XXXIII—19

a sister State of competent jurisdiction, and is *prima facie* conclusive with respect to what it professes to decide, qualified with the limitation that it has, in the given case, jurisdiction of the subject matter, and its proceedings have been regular. (Story's Conflict of Laws, §§ 590 and 592, Redfield edition.)

A judgment of a State court has the same credit, validity and effect, in every court in the United States, which it had in the State where it was rendered, and whatever pleas would be good to a suit thereon in such State, and none others, may be pleaded in any other court in the United States. (Cook v. Thornhill, 13 Tex., 293.)

It was held by this court, in Norwood v. Cobb, 15 Tex., 500, that a want of notice in actions *in personam* amounts to a want of jurisdiction. But this was a chancery suit against Norwood, brought in Mississippi, to recover two slaves, or their value. The decree rendered was for the value of the slaves. Upon this record, or decree, suit was instituted for a money demand. This was an action not *in rem* but *in personam,* and although the subpœna in the chancery suit was returned, "served," by the sheriff, when in truth it was not served, the court here held that the party to the suit in this State ought to have been permitted to show, upon the trial, that the sheriff's return was false, and a fraud upon the defendant and the court in Mississippi. The doctrine of this case must be understood to apply to cases where the party is entitled to notice. In a proceeding against a defaulting and absconding administrator and the sureties on his bond, where the proceedings are regulated by statute, and under that statute the sureties are not entitled to notice in fixing the liability of the parties to the bond, the principle laid down in Norwood v. Cobb would not apply.

The judicial tribunals of every State are the sole expositors of its local laws, and the decisions of its courts upon the construction of those laws are binding upon all other courts, in deciding upon the rights of property and of action depending upon those laws. (Powell v. DeBlanc, 23 Tex., 66.)

There are cases under our own statute where a party is not entitled to notice in the rendition of a statutory judgment against him; e. g. the obligors in a writ of error bond, the sureties of which, upon affirmance of the judgment, become bound by a statutory judgment without notice, and such a judgment will support an execution, and the judgment is a lien upon the land of the sureties in the county of his residence from the date of the bond. (Berry v. Shuler, 25 Tex. sup., 140.) If we apply the same principle to the case of the obligors on an administrator's bond, under the statutes of Alabama, the appellant would be bound by it, and it would be no defense to say that he was not personally served.

It will be seen by an examination of the record that this action is founded upon a certified copy of the proceedings in the Probate Court of Marengo county, in the State of Alabama, which had jurisdiction of the whole case; and in the petition and the amended petition, that the execution and breach of the bond are specifically set up (the original bond being on file in said Probate Court of Alabama, the appellees were not entitled to control it); and whether the appellant was personally served with process or not is wholly immaterial to the purposes of this case, because his liability is made to depend upon the faithful performance of the duties of the trust, assumed by the administrator, under the laws of Alabama, and under and by virtue of these laws he was not entitled to notice; and this is one of a class of cases, which is an exception to the general rule requiring personal service in order to bind a party    Inasmuch, then, as the appellant's liability was ascertained and determined by the laws of the State of Alabama, we invite the attention of the court to those laws, premising that they were produced and read in evidence upon the trial of this cause in the court below.

Robt. P. McClinton, having died intestate, in the county of Marengo, State of Alabama, Benj. A. Easeley was appointed his ad-

ministrator by the Probate Court of said county, on the twenty-seventh of September, 1852, and entered into bond, with William McClinton and Anselm B. Easeley, the appellant, as his sureties, for the faithful discharge of the duties of his trust. In this the jurisdiction of the court, was properly exercised. (See Art. 670, Alabama Code, 1852, by Ormond, Bagby and Goldthwaite.) The bond and security were taken in accordance with Articles 1683 and 1684. Inventory and appraisement were returned into said court, and the administration went on regularly until November 5, 1855, when an order was made by said court, citing the administrator to appear and give a new bond, and file his exhibit for final settlement. The citation was served. This was authorized by Article 1697. We may presume that the action of the court was proper under Article 1699. On the fourteenth day of April, 1856, being a regular term of the court, the administrator having failed to appear, as he was required to do, and file his account, and it appearing to the court that he had absconded and left the State, on motion an account was stated, and notice of the same was ordered to be given by publication, which was done. This was regular and according to law. (Arts. 1805, 1876.) And having left the State, the administrator was removed. At the August term, 1856, the account stated by the court, at the April term preceding, was allowed, and final settlement made, after due notice, and failure of the administrator to render the same; and William McClinton, one of the sureties on the bond, was present when said several orders and settlement were made. This was not only sanctioned but required by Articles 1876, 1877, 1878, 1879 and 1880.

Under these proceedings all the obligors on the administrator's bond were liable for the deficit in the administrator's account, and it was proper for the court to order execution; first, against the administrator for the amount of said estate in his hands unaccounted for, on decree of final settlement, (Art. 1921); and upon

a return of *nulla bona* on the execution by the sheriff, as was the case here, it was then proper to issue execution against the administrator and his sureties, without further notice to them. It was a statutory judgment, and well supported the execution. (Art. 1922.) It will be seen by reference to these proceedings, and the laws under which they were had, that the liability of all the obligors on the bond was fixed, and the amount of the breach ascertained in strict accordance with law. The laws of the State were a part of the contract when the bond was executed, and there was no provision in the law, or the contract itself, that entitled the sureties to personal service, and hence the case would be clearly an exception to the general rule heretofore in this brief adverted to. The appellant is presumed to know the law regulating his undertaking at the time he executed the bond, and that in default of his principal he was bound, and by the terms of his undertaking, and the law which was a part of it, that he was not entitled to personal service when his principal had been guilty of maladministration. The administrator having absconded without filing his account for final settlement, with the funds of the estate in his hands, it was the duty of the court to audit and state his account, as was done, and to ascertain the amount unaccounted for and to his debit, and to order execution against the administrator for the amount so ascertained to be due and in his hands, and upon a return of no property, then a statutory judgment on the bond for said amount became a legal consequence, upon which execution might issue against both the administrator and his sureties. We respectfully contend that all these proceedings were regular, and had the sanction of law, and are conclusive and binding, unless set aside for fraud, mistake, etc.

The return of *nulla bona* on the execution against the administrator was evidence of a *devastavit*, for which his sureties were immediately liable—and the law having pointed out the mode of ascertaining the extent of that responsibility, in strict conformity

thereto—the appellant cannot be heard in seeking to screen himself from his liability, because he had not personal service or notice of these proceedings when he was not entitled to any, and as the proof shows, followed in the footsteps of the administrator in leaving the State.

It is further submitted, that the case at bar is not the only one exceptional to the general rule requiring personal service to bind a party in a judgment against him. The obligors in an injunction, trial of the right of property, appeal, writ of error and forthcoming bonds, are all exceptions to the general rule. In all these cases, upon default, a statutory judgment against the obligors is a legal consequence, and such judgments would support executions. Such, indeed, would be the case now before the court. The sureties of the appellant on his appeal bond, in case the judgment should be affirmed, would not be heard to complain that a judgment was rendered against them without notice. Such being the case, no sufficient reason can be assigned why the record from the Probate Court of Alabama does not furnish a good and meritorious cause of action in this case. Any other rule would throw down all the safeguards which the statutes of Alabama, and in most, if not all the States of the American Union, including our own, throw around estates to protect the innocent and helpless against acts of maladministration.

WALKER, J.—The appellees commenced suit in the district court on the twenty-ninth of December, 1859, seeking to recover from the appellant the sum of $1183 62, the amount found due by the Probate Court of Marengo county, Ala., at the August term for the year 1856, against Benjamin A. Easley, as the administrator of Robert P. McClinton's estate, and the appellant and Wm. McClinton as his sureties. Suit was brought on a record of what was claimed to be a valid judgment of said probate court against the parties. The proceedings lingered in the district court until

the first of June, 1869, when the plaintiffs amended their petition by setting up the administrator's *bond*. No proper allegation of a breach of the condition of the bond, or of *devastavit*, was made, and the plaintiffs below appear to have relied entirely upon the record of the probate court of another State to prove their case.

Courts of probate, being of special and limited jurisdiction, created by local laws, and deriving their jurisdiction from such local statutes, there is no presumption of law to sustain their judgments and decrees, and their records must show an explicit and special finding of all *material* facts necessary to their jurisdiction and the validity of their findings. The maxim, "*omnia recte presumuntur*," will not apply to them in the courts of other States. (31 Conn. R., 381, Portovine's appeal.) But the record in this case shows that the Probate Court of Marengo county, Ala., had no jurisdiction of the person of Benjamin A. Easley, administrator, nor his security, Anselm B. Easley. The only service claimed was by publication for three consecutive weeks in a local newspaper. In the case of Norwood and others v. Cobb, 15 Texas, 500, the court held that where suit is brought upon the judgment of the court of another State, rendered in a suit *in personam*, the defendant may prove that he was not served with process in such suit, although there appears in the record proper process regularly returned, "executed;" and if such proof be made, the judgment cannot be enforced in this State. (11 Howard's S. C. Reports, 165.) The court say: "When a judgment was given in New York, against one of two partners, one of whom resided in Louisiana, and was never served with process, and an action was brought against him in Louisiana upon this judgment, a peremptory exception, in the nature of a demurrer, that the judgment sued upon is not one on which suit can be brought against the defendant in this court, was well founded." This decision was given upon the interpretation of a statute of New

York, providing that when joint debtors are sued, and one only is brought into court on process, and judgment passes for the plaintiff, he shall have judgment and execution against all the joint debtors named in the original process, in the same manner as if process had been served upon all.

The judgment of the Probate Court of Marengo county, Alabama, then, cannot have full faith and credit in the courts of this State; and inasmuch as it shows its own inherent nullity, as against the appellant, it was entirely unnecessary for him to resort to *aliunde* evidence to prove it void. (See Cooley on Constitutional Limitations, 17, and the authorities cited.) "It is well settled that if the record of a judgment shows that it was rendered without service of process or appearance of the defendant, or if that fact can be shown without contradicting the recitals of the record, it will be treated as void in any other State, notwithstanding the constitutional provisions." (Benton v. Bergot, 10 S. & R., 242; Theuber v. Blackburn, 1 N. H., 242; Hall v. Williams, 6 Pick, 232; Aldrich v. Kenney, 4 Conn., 380; Bradshaw v. Heath, 13 Wend., 407; Robinson v. Ward's executors, 8 Johns., 86; Fenton v. Garlich, Ibid, 194; Kilburn v. Woodworth, 5 Johns., 37; Pawling v. Bud's executors, 13 Johns., 192; Starbuck v. Murray, 5 Wend., 161; Westervett v. Lewis, Ibid, 511; Bumler v. Dawson, 4 Scam., 536; Gleason v. Dodd, 4 Met., 333; Haynes v. Butler, 6 Barb., 613; Warren v. McCarthy, 25 Ill., 95; Rape v. Heaton, 9 Wis., 328; Wood v. Watkinson, 17 Conn., 500.)

The judgment, it is claimed, may be used as evidence to support an action for the penalty of the bond; or the bond may be set up to show certain primary facts, and the judgment offered to help them out. This cannot be done. If the judgment is void as such, it cannot be entitled to verity as matter of evidence. Nor was this in anywise the proper course to fix the liability of the administrator. Suit should have been brought upon his bond in the proper forum, a breach and *devastavit* averred and proven, if

such are the facts; and the plaintiffs below could not fail thus to secure their rights. It is in vain now to invoke the equitable relief of this court to amend and patch up the blunders which have been committed. Equity, whether administered by this court or any other, can only grant its relief in due compliance with the terms and forms of the law of equity. We are asked to dismiss the case because it is claimed that the action is barred by limitations. The complete adoption of the Constitution of 1869 may raise questions which we do not feel called on to decide in this case, touching the law of limitations. The judgment of the district court will be reversed and cause dismissed, without prejudice to the bringing of another action.

Reversed and dismissed.