63  193
75  407

ENOCH BROXSON v. JOHN McDOUGAL.

(Case No. 1998.)

1. DESCRIPTION — CERTAINTY — SURVEY.— A decree of a court of competent jurisdiction purported by its terms to establish a lost deed, through which the plaintiff claimed title to land, which the same decree declared him to be the owner of, but which was not described except by reference to the description contained in the lost deed to his vendor. That description identified with certainty the first line, described the third line while calling for

Opinion of the court.

the second, and described the fourth line which closed the survey. *Held*, that the description was sufficient.

2. SAME.— See opinion for facts which did not render a description of land contained in a decree of court void for uncertainty.

3. CERTIFIED COPY — AUTHENTICATION.— An act of sale executed for land which was not located in San Augustine county was recorded in that county, together with the following certificate attached thereto:

"I do certify that the foregoing is a true copy of the original, given under my hand and seal this 25th day of November, A. D. 1836.

[SEAL.]                          "S. W. BLUNT, Clerk."

*Held*, that a copy of the record so made was not admissible in evidence,— the certificate showing that the instrument recorded was but a copy of the original, and there being nothing to show that the original was an archive of which certified copies could be given.

APPEAL from Houston. Tried below before the Hon. J. M. Maxcy, Special Judge.

*D. A. Nunn*, for appellant, on the sufficiency of the description, cited: Faver v. Robinson, 46 Tex., 204; Shields v. Hunt, 45 Tex., 427; Woodson v. Allen, 54 Tex., 551; Flanagan v. Boggess, 46 Tex., 335; Kilpatrick v. Sisneros, 23 Tex., 117–136; Norris v. Hunt, 51 Tex., 615; Wofford v. McKinna, 23 Tex., 43.

*W. B. Wall* and *Denson & Burnett*, for appellees, on description, cited: Smith v. Chatham, 14 Tex., 322; Rains v. McMills, 14 Tex., 616; Hunter v. Morse, 49 Tex., 219; Freeman v. Brundage, 57 Tex., 253; Steinbach v. Stewart, 11 Wall., 566.

On the admissibility of the certified copy, they cited: R. S., arts. 2256, 4330; Hart. Dig., art. 260; Hutchins v. Bacon, 46 Tex., 415; Cowan v. Williams, 49 Tex., 395, 396; Hardy v. De Leon, 5 Tex., 239.

STAYTON, ASSOCIATE JUSTICE.— There are but few questions presented, which it will be necessary to consider in view of their controlling importance.

It is urged that the petition does not describe the land sought to be recovered with such certainty as is requisite in actions of this character; and that the demurrers which presented this question should have been sustained.

If it be admitted that the surveys or tracts designated as the Read, Thompson and Bell surveys or tracts actually exist (and this must be assumed to be true from the averments of the petition), then the description given of the land sought to be recovered is given with great accuracy, and must be held sufficient.

The real question would seem to be: Does the description of the land contained in the decree made in the action between McCall and the heirs of Mrs. Barnett cover the land described in the petition?

That was an action, so far as appears by the decree therein made, which is found in the record, in which McCall sought by decree of court to substitute a lost deed made by Mrs. Barnett and her husband to Wade and Wilson, through whom McCall claimed, in which he sought and obtained a decree vesting title in himself, and divesting the title of the heirs of Mrs. Barnett in land described in the decree, as well as substituting a deed made to Wade and Wilson.

The decree made in that case establishes the fact that on November 22, 1855, Mrs. Barnett, joined by her husband, made, executed and delivered a deed to Wade and Wilson for the land described in the decree.

The deeds through which the appellee claims the land, made sub- sequently to that made to Wade and Wilson, refer to that deed, in effect, for a description of the land by them conveyed.

It therefore only becomes necessary to inquire whether the land described in that decree covers the land sued for.

The description of the land as given in that decree is as follows: "Part of the John Moore league situated in Houston county, Texas, on the waters of Tantabogue creek, being 1,621 acres out of the south part of said league, beginning at the southeast corner of said league, a corner whence a black jack 10 in. dia. bears S. 68° E. $11\frac{4}{10}$ varas, another black jack 18 in. dia. bears S. 13° W. $8\frac{4}{10}$ varas; thence N. $54\frac{1}{2}$ E., the corner of a survey of land made out of said league for R. N. Read; thence south, said Read's line in a westerly direction to the lands of Daniel Atkinson; thence with the line of said Atkin- son to the lands of B. F. Thompson; thence with the line of the said Thompson survey of 1,107 acres, out of said league, to said Thompson's southeast corner on the south boundary line of said league; thence south $35\frac{1}{2}°$ E. with said league line to the place of beginning, containing 1,621 acres, more or less."

It is not controverted that the Read survey, which is also a part of the Moore league, and contains about one thousand three hundred and sixteen acres, has not long been established. It is therefore un- important whether the course called for from the southeast corner of the league to the Read corner on the league line be the true course of that line or not; for the point on that line of the league at which the Read corner is found will be the true corner of the land sued for, in whatever course that line of the league may run.

The Atkinson survey or tract is shown to be a part of what was originally the Read tract. The call to run with the lines of these two tracts is clear. The Thompson tract, if not actually established on the grant from the calls of the Thompson deed, may be established with certainty. It is probable that the line of the Thompson tract will not be a prolongation of the lower line of the Read and Atkinson; but, if so, this does not affect the certainty of the description; for from the westerly corner of these surveys, or the most westerly one of them, the line must run, whatever be its course, to the southeasterly corner of the Thompson, and thence with the line of that tract to its southeast corner on the league line; thence with the league lines to the beginning. There is evidently an omission, in the decree, of one line; but, the other three being established, that line must in the nature of things be the league line, running in a westerly direction from the beginning point in the decree, which is a corner of the Moore league, to the corner which would be designated as the southwest corner of the league. In no other way would the lines close, and in no other way would the evident intention of the grantors to convey about one thousand six hundred and twenty-one acres of land off the south part of the grant be carried out. About that area remained after former sales.

We are of the opinion that the description of the land given in the decree covers all the land between a line composed of the lower lines of the Read and Thompson tracts, and such line as may be necessary to connect the lower lines of these tracts, if they be not contiguous, and the lower line of the Moore league; in other words, that the description embraces all the land within the league lines, and below the lower lines of the Read and Thompson tracts, and below such lines as may be necessary to connect the southwesterly corner of the Read or Atkinson with the southeasterly corner of the Thompson tract. Smith v. Chatham, 14 Tex., 322; Rains v. McMills, 14 Tex., 616; Barnard v. Good, 44 Tex., 640; Hunter v. Moore, 49 Tex., 219; Freeman v. Brundage, 57 Tex., 253.

That the land so described may cover the Bell tract is immaterial, for if the conveyances through which that tract is held be older, and for no reason compelled to yield to the junior title, then as to that tract the appellee is not entitled to recover; but the fact that he may not be entitled to recover all the land embraced in the conveyances through which he claims, as against some one having the superior right to a part, furnishes no reason why he may not recover all the land contained in the description in his titles as against one having no title, except as outstanding title may be a defense to such person.

It does not appear, however, that the plaintiff in this cause is asserting title to the Bell tract.

The only remaining question necessary to be considered relates to the ruling of the court below in the admission of a certified copy of the conveyance from Moore to Hotchkiss.

That instrument purports to be a copy of an act of sale executed before the judge of first instance in the town of San Augustine, on November 23, 1836, certified by the clerk of the county court for San Augustine county.

There is no objection made to the form of the instrument, nor as to the manner of its execution; but it is urged that the paper offered in evidence is not a copy of the original act of sale in the custody of the clerk of the county court for San Augustine county as an archive, of which he may give a certified copy.

The instrument is followed by this certificate:

"I do hereby certify that the foregoing is a true copy of the original, given under my hand and seal this 25th day of November, A. D. 1836.

[SEAL.]                                    "S. W. BLUNT, Clerk."

Then follows this certificate:

"STATE OF TEXAS,        }
"County of San Augustine. }

"I, F. H. Dickson, clerk of the county court in and for said county and state, do hereby certify that the above and foregoing is a true and correct copy from the records of my office.

"Given under my hand and seal of the county court at San Augustine, Texas, the 29th April, 1859.

"F. H. DICKSON, C. C. C. S. A. C."

This certificate shows that the certificate of S. W. Blunt, as well as the paper purporting to be so certified, composed the record which he certified to be a true copy from the records of his office.

It thus appears that the paper of record in his office is but a copy of the original act of sale made and certified by S. W. Blunt.

That the certified copy and certificate of Blunt offered in evidence appear on the record in San Augustine county just as they are here certified by the county clerk is also made to appear by the testimony of the witness who procured the certified copy.

If the original act of sale was in the possession of the clerk of the county court for San Augustine county, he might give certified copies of it, and they would have the same effect as certified copies of other papers of which he is the custodian. Hutchins v. Bacon, 46 Tex., 415; Cowan v. Williams, 49 Tex., 395; Hubert v. Bartlett,

9 Tex., 102; Hooper v. Hall, 35 Tex., 85; Andrews v. Marshall, 26 Tex., 216; R. S., 2256, 4330.

But he is not shown to have been the custodian of the original, and there was no authority, the land conveyed not being in San Augustine county, to place upon the records of that county a copy of the act of sale, however it may have been certified; hence a copy taken from a record so made was not admissible in evidence. Hutchins v. Bacon, 46 Tex., 415; State v. Cardinas, 47 Tex., 250, and authorities before cited.

The bill of exceptions shows that the court below felt authorized to disregard the certificate of Blunt, and treated the instrument which the clerk certified from his record as the original act of sale.

This could not be done, for the certificate of Blunt shows that the instrument recorded was but a copy of the original, and there is nothing in the certificate of the clerk to show that the original is an archive which he is empowered to give certified copies of.

For the error of the court in permitting the introduction of the certified copy before referred to, the judgment of the court below will have to be reversed and the cause remanded, and as it is not likely that other questions presented will arise on another trial they will not now be considered.

It is accordingly so ordered.

Reversed and remanded.

[Opinion delivered January 30, 1885.]