JAMES A. WREN ET AL. v. AMELIA HOWLAND.

Decided June 17, 1903.

**1.—Limitations—Married Woman—Coverture.**

Where a married woman owning land in her separate right remained under coverture from the time she acquired the title in 1858 until her death in 1896, which was after she had instituted suit for the land, the defendants, who had gone into adverse possession during such period of coverture, could not avail themselves of limitations as a defense under the three, five or ten years statute.

**2.—Deed by Foreign Guardian—Orders of Foreign Court.**

The deed of a curatrix acting under the orders of a probate court of Louisiana will not convey the title of the ward to lands situated in Texas.

**3.—Deed—Proof for Record by Subscribing Witness.**

Proof of a deed for record made by a subscribing witness under the Act of May 12, 1846 (Hart. Dig., art. 2791) was sufficient where it stated that the witness swore that the grantor "acknowledged same to be his act and deed," etc., instead of "acknowledged in his presence that he had subscribed and executed the same," etc., and it was not necessary that the officer should certify that the witness was known to him.

**4.—Evidence—Objection Too General.**

Objection to the introduction of a statement in a deed as a whole is not sufficient to raise the question of the admissibility of a specific part of the statement, and it was not error to admit the entire statement if any part of it was admissible, as the court could, upon proper request, control the objectionable portion by charge, or exclude it.

**5.—Same—Pedigree—Declarations in Deed.**

A declaration or statement contained in a deed executed by one who has since deceased is admissible on the subject of his pedigree, which includes the facts of birth, marriage and death, and may be used as original evidence even against strangers to the title.

**6.—Common Source—Void Deed—Trespass to Try Title.**

A void deed under which one of the parties claims in trespass to try title is admissible in evidence to show common source of title.

**7.—Innocent Purchaser—Void Deed.**

A person can not be regarded as an innocent purchaser of land where one of the deeds constituting an essential link in his chain of title is void.

**8.—Evidence—Records of Court of Another State.**

The full faith and credit required by the act of Congress to be given to the judicial proceedings of a sister State applies only to those of a court having jurisdiction over the subject matter with which it is attempting to deal, and certified copies of the proceedings of a probate court in Louisiana ordering a sale of land situated in Texas are not admissible in evidence by virtue of that act, nor could partial contents of such copies be used to prove statements therein contained.

**9.—Same—Proof of Heirship and Pedigree.**

Where defendants denied that a remote grantor of plaintiffs was a son of the patentee of the land in controversy, the pleadings in a suit for divorce in the courts of this State, brought by the wife of such patentee, in which she prayed for the custody of a minor child who was afterwards plaintiffs' remote grantor, were admissible in evidence, the wife having since died, and there being no controversy at the date of the divorce suit as to the heirship of the child.

**10.—Same—Judicial Proceedings of Home Court—Certified Copy.**

Such proceedings of a court of this State could, under the statute, be proven by certified copies thereof. Rev. Stats., art. 2306.

**11.—Same—Wife's Separate Property.**

Where a deed of land to the wife did not state that it was to be her separate property, and she brought suit for the land against third parties who were not claiming as creditors of the husband, nor under him, but by a different title, it was proper to admit her testimony to the effect that her husband always recognized that the land was her separate property, and that this was the understanding between herself and husband and her grantor at the time the land was deeded to her.

**12.—Power of Attorney—Record.**

A power of attorney to sell lands is not entitled to record in a county in which none of the land is situated.

**13.—Same—Archive of General Land Office—Certified Copy.**

A certified copy of such power of attorney from the records of a county in which none of the land was situated did not become an archive of the General Land Office by virtue of being filed therein.

**14.—Evidence—Heirship—Death.**

Where it was an issue as to whether W., one of plaintiffs' grantors, was a son of the original grantee of the land in controversy and was dead, it was admissible for plaintiffs to show that the wife of such original grantee on one occasion visited a grave in Texas, saying that it was the grave of W., her son, etc.

**15.—Same—Pedigree—Family Bible.**

Entries in the family bible of W., made by himself, were admissible in evidence to show his age, and that he was born after the date of the marriage of his mother to the original grantee of the land.

**16.—Same—Declarations.**

Declarations of the wife of the original grantee, since deceased, made in conversations long prior to any controversy as to the title, tending to show that she was the wife of such original grantee and the mother of W., were admissible as original evidence.

**17.—Same—Impeaching Testimony.**

Testimony of a witness as to pedigree and family history may be impeached by showing that his mental capacity and faculties of recollection were much impaired.

**18.—Practice on Appeal—Record Should Show Refused Charges.**

Where error is assigned to the refusal of the trial court to give certain requested charges, the record should contain such refused charges showing them to have been in writing and signed by the appellant or his counsel.

**19.—Assignment of Error.**

An assignment embracing more than one separate and distinct question will not be considered.

Appeal from the District Court of Caldwell. Tried below before Hon. L. W. Moore.

*A. B. Storey, Jas. L. Storey, S. B. McBride,* and *Walton & Walton,* for appellants:

*Will G. Barber* and *E. B. Coopwood,* for appellees.

FISHER, CHIEF JUSTICE.—This is an action of trespass to try title, and was originally brought by Amelia M. Howland and her husband, Thomas A. Howland, to recover an undivided one-half interest in a league and labor of land, situated in Hays County, patented to the heirs

of David Wilson. In 1896 Mrs. Howland died, when her husband Thomas A. Howland and her son Henry Howland made themselves parties plaintiff, and sought to recover as the heirs of Mrs. Amelia Howland.

The defendants, who were James A., John and Mack Wren, O. G. Parke, S. M. Heard and B. F. Herndon, for answer filed certain demurrers, pleaded not guilty, and pleaded the statutes of limitations of three, five and ten years and improvements in good faith.

In reply to the pleas of limitation, the plaintiffs pleaded the coverture of Mrs. Amelia M. Howland from 1853 to the time of her death in 1896.

The questions arising on the evidence and pleadings in the trial court were submitted to the jury by special issues, and upon the answers returned by the verdict of the jury in response to the special issues submitted, the trial court rendered judgment in favor of plaintiffs for the land sued for, and rendered judgment adjusting the value of improvements erected by the defendants and the rents due plaintiffs from the defendants.

There are no assignments of errors by any of the defendants who are appealing from the judgment of the trial court complaining of so much of the judgment as relates to the subject of improvements and rents. Appellants in their brief make this statement: "There are four main issues in the case: (1) as to the heirship of plaintiffs' remote vendor, James M. Wilson, as the heir of David Wilson, the grantee of the land; (2) whether the land in controversy was the separate property of Amelia M. Howland, the plaintiff under coverture when the suit was brought, who died pending the litigation; (3) whether defendants were purchasers of the land bona fide, for value, and without notice in the meaning of the law; (4) as to whether defendants have acquired the land sued for by the statutes of limitations of five years, under all the facts; and, incidentally, the subject of valuable improvements in good faith was involved.

This statement of the issues involved is substantially correct, and is apparently acquiesced in by the appellees, in that it is not denied or controverted in their brief. As said before, we do not find where any objection is raised to that portion of the judgment of the trial court that relates to the subject of improvements in good faith.

We find the facts material to the disposition of this case to be as stated in the following condensation of the many facts established by the special verdict of the jury, and some additional facts, as shown by the evidence in the record:

The league and labor of land, a part of which is in controversy, and which is situated in Hays County, Texas, was granted to the heirs of David Wilson, by patent of date July 3, 1847. This patent is based upon a land certificate issued to David Wilson by the Board of Land Commissioners of Harrisburg County, Texas, on February 2, 1838, for one league and labor of land. The certificate recites that on the day

of its date David Wilson appeared in person before said land board, and proved according to law that he had arrived in the Republic of Texas in the year 1835, and that he was a married man.

On October 9, 1830, in Indiana, David Wilson, the grantee mentioned in the two above instruments, married Ophelia P. Morrell. About 1831 or 1832 there was born of this marriage a male child that was subsequently named James M., and the evidence authorizes the conclusion that this was the only child born of that marriage.

David Wilson, the grantee, is shown to be dead, and the evidence warrants the conclusion that he died at some period of time between the years 1841 and 1847; and upon his death the land descended one-half to his son James M. Wilson, and one-half to his wife, Mrs. Ophelia P. Wilson, as her community interest. It is the interest of James M. Wilson only, which is in controversy in this suit.

May 30, 1854, James M. Wilson by deed conveyed his undivided one-half interest in the land in controversy to Abram M. Gentry. This deed was recorded in 1854. December 16, 1858, by a deed duly executed and delivered, Abram M. Gentry conveyed the land in controversy to Amelia M. Howland, which deed was duly recorded November 12, 1860. At the time this deed was executed, it was the purpose and intention of Gentry, Amelia M. Howland and her husband Thomas A. Howland, that the land therein conveyed should become and be the separate property of the grantee, Amelia M. Howland; and we find as a fact that the evidence shows that the land in controversy became the separate property of Amelia M. Howland by virtue of this conveyance, and continued to be her separate property from that time to her death, which occurred in 1896; and that during all that time she was under coverture as the wife of Thomas A. Howland, to whom she was married in 1853; and that the defendants went into possession and continued in possession during such coverture. Therefore we find that the right and title asserted by the plaintiffs was not, up to the time of filing this suit, affected by the statutes of limitation which were pleaded by the defendants.

September 11, 1898, Thomas A. Howland executed and delivered to Henry A. Howland a deed conveying an undivided one-half interest in the league and labor of land in question, and all claim of the former against all persons for the use and occupation thereof, as alleged by the plaintiffs in their petition.

The several defendants herein deraign their title or claim of title to the land in controversy through a deed executed by Ophelia P. Talbot, which attempts to convey her interest in the David Wilson league, and the interest of her minor son, James Wilson. This latter interest is the same interest conveyed by James Wilson in the deed to Abram M. Gentry. The deed here mentioned was executed by Ophelia P. Talbot to Francis Brichta, dated March 31, 1852, and recorded in 1852. The effect of this conveyance is to establish the fact that the defendants and the plaintiffs claim under James Wilson, as common source of title.

The James Wilson here mentioned is the same James M. Wilson, the son of David Wilson, the original grantee of the land in question, and of his wife Ophelia P. Wilson. The grantor in this deed, Ophelia P. Talbot, was formerly Ophelia P. Wilson; and there is some evidence in the record tending to show that after the death of her former husband, David Wilson, she married a man by the name of Talbot.

In 1852 Francis Brichta conveyed the land in controversy to D. C. Osborn, which conveyance was recorded in 1852. All of the defendants, except Mack Wren and John Wren, bought their respective interests in the land in question in good faith, under the above two last mentioned deeds, and they have had actual possession of the land, using, cultivating and enjoying the same, and paying taxes thereon under deeds duly executed and registered for more than five years prior to July 31, 1893. And according to the findings of the verdict of the jury, the defendants claim the land in controversy by a consecutive chain of title, from and under the deed heretofore stated as executed by Ophelia P. Talbot and her husband, wherein she attempts, as curatrix for her minor son James Wilson, to convey the land in controversy to Brichta. We find that this deed was simply admitted by the court for the purpose of establishing common source of title in James M. Wilson. Other than for the purpose of serving as a basis of common source of title, we find that this deed was not sufficient to convey the title and interest of James M. Wilson in the land in controversy, for the reason that he was not a party to the conveyance, but it was executed by his mother Ophelia Talbot as curatrix, acting under authority and by virtue of orders of a probate court of the State of Louisiana, that court having no jurisdiction over lands situated here in Texas.

There being no question raised on the issue of improvements in good faith, or the subject of rents, it is unnecessary to make any findings of fact upon these questions.

Appellants' first assignment of error complains of the admission in evidence of the deed executed by A. M. Gentry to Mrs. Amelia M. Howland, for the following reasons: (1) Because the officer taking the acknowledgment does not state in his certificate that the officiating witness Louis B. Reed was known to him; (2) because the subscribing witness did not state under oath that he saw the grantor subscribe the same, and did not swear that the grantor acknowledged in his presence that he had subscribed and executed the deed for the purposes and consideration therein stated; and (3) that the officer who took the acknowledgment had no authority to take acknowledgment of deeds to land located in Texas. The acknowledgment is as follows:

"State of New York, City and County of New York. I, Gordon L. Ford, a commissioner in said State, appointed by the Governor of the State of Texas to take and administer oaths and affirmations, and to take the acknowledgment and proof of deeds to be used and recorded in said State of Texas, do hereby certify that this day Louis B. Reed, Jr., personally appeared before me, and being duly sworn, saith that

Abram M. Gentry, whose signature appears to the annexed instrument of writing, acknowledged same to be his act and deed, for the considerations and purposes therein expressed, and that he, with John Sesseons, the other witness, subscribed their names as witnesses thereto at the request of the same Abram M. Gentry.

"In testimony whereof, I hereunto set my hand and official seal, this 17th day of December, 1858." Signed by "Gordon L. Ford, Commissioner for Texas in and for the State of New York."

The eighth section of the Act of May 12, 1846 (Hart. Dig., art. 2791), under which this acknowledgment is taken, reads as follows: "That the proof of any instrument of writing, for the purpose of being recorded, shall be by one or more of the subscribing witnesses personally appearing before some officer authorized to take such proof, and stating on oath that he or they saw the grantor, or person who executed such instrument, subscribe the same, or that the grantor or person who executed such instrument of writing, acknowledged in his or their presence that he had subscribed and executed the same for the purposes and consideration therein stated, and, that he or they had signed the same as witnesses, at the request of the grantor or person who executed such instrument, and the officer taking such proof shall make his certificate thereon, sign and seal the same with his official seal."

The effect of the certificate is to state that the grantor, Gentry, acknowledged and admitted to the subscribing and officiating witness, Louis B. Reed, that he, the grantor, had subscribed and executed the deed for the purposes and consideration therein stated. This brings it within the terms of the statute as quoted. It was not required by the act in question that the certificate should state that the subscribing witness was known to the officer taking the acknowledgment. Sowers v. Peterson, 59 Texas, 216; Watkins v. Hall, 57 Texas, 1; Cook v. Cook, 5 Texas Civ. App., 30.

In the last objection it is contended that there was no law authorizing a commissioner of deeds to take the acknowledgment of conveyances to land situated in Texas; the contention is that the Act of May 8, 1846, conferring such authority, was repealed by a subsequent law passed during the same month at the same session of the Legislature. This question was discussed by the court in Monroe v. Arledge, 23 Texas, 481, and the point was ruled contrary to the contention of appellants. But, however, if this certificate could be held defective, it would not constitute reversible error, because the execution and delivery of the deed was established by other evidence found in the record, which was not objected to.

The deed from James M. Wilson to A. M. Gentry contained this recital: "I declare that I am the son of David Wilson, deceased, and, except my mother Ophelia P. Wilson, or Talbot, I am the only heir." The defendants objected to this recitation, because they were strangers to the deed, and that it was not admissible to prove the material issue in the case, whether James M. Wilson was the son of David Wilson, the

grantee of the land in controversy, and insisted that the jury be instructed to disregard the recitation. James M. Wilson had been dead many years at the time of the trial of this case, and it was a disputed question in the court below whether he was the son of David Wilson, the grantee. The appellants contended, and offered much evidence to the effect, that his father's name was James Wilson, and not ·David Wilson, the grantee of the land in controversy. At the time this deed was executed, the controversy suggested in this case had not arisen. The statement "I am the only heir," might not be admissible, but the objection was not urged to that, but embraced the entire statement. The court was asked to exclude all of the statement, and not a part of it. This being the case, if a part was admissible, it was the duty of the court to admit it and to control, if asked, which was not done, the objectionable portion either by a charge or to exclude it. The portion of the statement to the effect "I declare that I am the son of David Wilson, deceased," and that his mother was Ophelia P. Wilson or Talbot, was admissible. A declaration or statement contained in an instrument executed by one who has since deceased is admissible on the subject of his pedigree. Summerhill v. Darrow, 94 Texas, 71; Chamblee v. Tarbox, 27 Texas, 145. In the latter case it is said: "Recitals in deeds are ordinarily said to be evidence only against parties and privies; but when the recital is of a matter of pedigree, which includes the facts of birth, marriage and death, it may be used as original evidence even against strangers."

It is contended by appellants, in their third assignment of error, that the trial court erred in admitting the deed of date March 31, 1852, executed by Ophelia Talbot and her husband to Brichta, in order to establish common source of title in James Wilson. They urge the fact that this deed being void, common source of title could not be established by such a conveyance. In Burns v. Goff, 79 Texas, 236, it is in effect held that a void deed under which the defendants claim may be offered as evidence establishing common source of title.

Appellant's fourth assignment of error complains of the refusal of the court to admit in evidence the deed above referred to, when offered by defendants as evidence of title. As before stated, the court admitted this deed when offered by the plaintiffs for the purpose of establishing common source of title, but declined to recognize its validity as establishing title in the defendants, and refused to admit it for that purpose. The plaintiffs objected to the deed because the certificate of acknowledgment of Mrs. Talbot was not sufficient under the statute that related to the subject of conveyance of property by married women; and for the further reason that the probate court of Louisiana had no authority or jurisdiction over the estate or the lands of the minor James M. Wilson situated in Texas. It appears from the face of the deed that so far as the minor is concerned, Mrs. Talbot attempts to act as curatrix by virtue of authority of the Louisiana court.

We are of the opinion that both of these objections are sound. The

acknowledgment was not in accordance with the terms of the statute. There was no authority shown in Mrs. Talbot to convey the interest of James M. Wilson. Mills v. Herndon, 60 Texas, 353; Moseby v. Burrow, 52 Texas, 404. And in this connection it may be well to dispose of the contention of the appellants to the effect that the evidence tends to show that they were innocent purchasers of the land in controversy. The deed just discussed would be an essential link in the chain of their title to connect them with the sovereignty of the soil, and this deed being eliminated on the ground that it is void, of course there is no foundation for the claim that they occupy the attitude of innocent purchasers.

The defendants offered in evidence certified copies under the act of Congress or proceedings of the probate court of Louisiana, for the purpose of showing statements of Mrs. Ophelia Talbot contained in these instruments, to the effect that James M. Wilson was the son of her husband, James Wilson. These statements appear in some of the proceedings and court papers filed in the Louisiana court concerning the guardianship of James M. Wilson. A copy of one of these papers, which appeared to be an inventory of the estate of James M. Wilson, is signed by Mrs. Ophelia Talbot. The others are not signed by her, but they were all offered as copies under the act of Congress which authorized the admission in evidence of the records and judicial proceedings of other States. The purpose of this evidence was to establish the fact that Mrs. Ophelia Talbot, formerly Mrs. Ophelia Wilson, the mother of James M. Wilson, admitted that her former husband's name was James and not David. Mrs. Wilson, or Talbot, died several years prior to the trial. The records offered were a part of a supposed judicial proceeding; and we are of the opinion that if the court in which these proceedings were created did not have jurisdiction, that they would not be admissible. The full faith and credit exacted by the act of Congress that should be given to the judicial proceedings of a sister State applies only to those of a court exercising jurisdiction, and would not extend to a recognition of one that had no jurisdiction over the subject matter with which it is attempting to deal. Norwood v. Cobb, 24 Texas, 556; Easley v. McClinton, 33 Texas, 288; League v. Henecke, 26 S. W. Rep., 729; Lindley v. O'Reilly, 50 N. J. Law, 636, 15 Atl. Rep., 379. At the time these proceedings occurred, James M. Wilson, the minor, was a young man recently captured as a member of the Lopez expedition to Cuba, and was from there sent and confined in one of the prisons of Spain.

It is apparent from the face of these proceedings in which the Louisiana court appointed Mrs. Talbot curatrix of the minor James M. Wilson, that the only purpose and object was to sell and dispose of the interest of James M. Wilson in the lands situated and located in Texas, which is the land in controversy, a part of the David Wlison league and labor; and that court could not, for any purpose, exercise its probate jurisdiction over lands situated here in Texas. Moseby v.

Burrow, 52 Texas, 404. There was no attempt to prove these documents, except in the way just stated. If the documents could not be admitted in evidence by reason of the fact that the court from which they are taken did not have jurisdiction, partial contents of them would not be admissible for the purpose of proving statements therein contained, where the only manner of proof consists in certified copies under the law permitting judicial proceedings occurring in other States to be admitted in evidence.

For the purpose of tending to prove that Ophelia Wilson was the wife of David Wilson, the grantee of the land in controversy, and that James Wilson was his son, the plaintiffs offered in evidence, and the same was admitted by the court, a certified copy of a petition for divorce from the District Court of Harris County, Texas, of Ophelia P. Wilson against David Wilson, filed on the 27th of November, 1840, sworn to and signed by Ophelia Wilson; and a certified copy of a petition in the probate court of Harris County, filed on September 12, 1840, signed by Ophelia Wilson for the guardianship of her minor son James Wilson.

To the introduction of this evidence the defendants objected for the reasons that there was no evidence showing the identity of the person making the application; that the original papers were not produced; that there was no evidence that the applicant in person signed the papers, or authorized the signing thereof in her name or at her request.

These documents were pleadings pending in the courts of this State from which they came, and by virtue of article 2306 of the Revised Statutes, certified copies under the hand and seal of the custodian of such records were admissible in evidence. It was the contention of the appellants in the trial court that Ophelia P. Wilson was not the wife of David Wilson, the grantee of the land in controversy, and that James Wilson, although her son, was not the son of this David Wilson. As stated before, Mrs. Ophelia Wilson died several years before the trial of this case, and at the time these pleadings were filed in the courts of Harris County, the controversy as to the heirship of James Wilson, or the fact of Mrs. Wilson's being the wife of David Wilson, had not arisen. The recitals of these documents which were executed by Mrs. Wilson, stating who was her husband at that time, and who was the father of James Wilson, was admissible.

The evidence complained of in appellants' eighth assignment of error was admissible as a fact and circumstance bearing on the question as to the ownership of the property in controversy after it was conveyed to Mrs. Howland. It was proper to admit her testimony to the effect that her husband always recognized that the land was her separate property, and that he never claimed any interest in it; and also as to what was the understanding between her and her husband and Gentry at the time that the conveyance was executed and delivered to her, as to whom the property belonged. She testified that it was the understanding of her-

self, her husband and Gentry, that the title was to vest in her as her individual property. The deed to the property was taken in her name, but there were no recitals contained in the face of the instrument that in express terms declared that the purpose and intention was that it should be her separate estate. This is not a case in which the creditors of Thomas A. Howland, the husband of Mrs. Howland, are seeking to subject the property to the payment of the husband's debts; nor is it a case in which anyone is claiming under a conveyance from the husband in oposition to a right asserted by Mrs. Howland in her separate interest. The defendants are not connected with the Howland title. Where the deed to the wife is silent as to whom it is intended that the title to the property shall vest, an inquiry is permissible into the understanding, agreement and intention of the husband and wife and vendor, in order to ascertain if the wife has a real separate interest in the property. The testimony objected to was not merely an opinion of the witness upon this subject, but was the statement of a fact which she seemed to be familiar with.

What has just been said also disposes of the question raised in the ninth assignment of error.

The appellants offered in evidence a certified copy from the records of Travis County of a power of attorney, executed by Mrs. Ophelia Henning and Albert Henning, on the 17th day of May, 1861, and recorded in Travis County on the 27th of January, 1862; and a certified copy of a copy of this power of attorney from the General Land Office, which contained the following statement: "Ophelia Henning, formerly Ophelia Wilson, the wife of David Wilson, deceased, joined by her husband Albert Henning, only heirs at law of David Wilson, deceased, who lost his life in the Texas war of independence at the Alamo, in the year 1836, constitute and appoint James Y. Eggleston and Matthew M. Young, to demand from the government of the State of Texas any and all lands, patents, land certificates, land warrants, money or pay due to the said Ophelia as only heir at law of the said David Wilson, deceased, for services in the Texas war of independence, as aforesaid, and to sell and convey one-half of said lands, etc., due the said Ophelia Henning and Albert Henning." This was acknowledged and signed by Ophelia Henning and Albert Henning.

It is here important to state that Mrs. Ophelia Talbot, who was formerly Ophelia Wilson, afterwards married Albert Henning; and the evidence in the record tends to identify this Ophelia Henning as the same person as Ophelia Wilson, the mother of James Wilson. The purpose of this evidence was to introduce the admission of Mrs. Wilson that she was the wife of a David Wilson, who fell at the Alamo, and not the wife of the David Wilson, the grantee of the land in controversy.

The objections which were sustained to the admission of this testimony were that it was not an archive of the Land Office, and that the paper from that office was a copy of a copy; the latter was not pro-

duced, and that the original was not properly recorded in the records of Travis County, as none of the land in controversy or that was called for in the power of attorney, was shown to be in Travis County.

None of the land in controversy is situated in Travis County, nor does it appear from the evidence that any of the land or property called for in the power of attorney was ever situated or located in Travis County. To entitle the power of attorney to be recorded, it must be in a county where some of the land or property covered by it was situated. French v. Groesbeck, 8 Texas Civ. App., 19; Broxson v. McDougal, 63 Texas, 197; Burck v. Taylor, 152 U. S., 635. A copy of the unauthorized deed records of Travis County of the power of attorney filed in the Land Office would acquire no higher standing than the record from which it is taken; and if the latter was unauthorized, the mere filing of a copy of it in the Land Office would not give to such copy so filed any validity. An unauthorized paper filed in the Land Office does not become an archive. Rogers v. Pettus, 80 Texas, 427; Patrick v. Nance, 26 Texas, 299.

The old bill of sale which is objected to by appellants' eleventh assignment of error, in connection with the testimony of Miss Alice Henning, the daughter of Mrs. Ophelia Henning, formerly Ophelia Talbot and Ophelia Wilson, was admissible on the issue of common source of title, which was sought to be established by the plaintiffs to be in James Wilson. It was proper to establish the fact that the mother of James, who pretended as curatrix to convey the property by deeds under which the defendants claim, was the Mrs. Talbot who was the mother of James Wilson. The evidence offered had some bearing upon this subject. If it was not admissible for this purpose, it was harmless, and would not be reversible error.

It is difficult to perceive the materiality of the evidence complained of in appellants' twelfth assignment of error, but its admission, in our opinion, was not harmful error.

The evidence complained of in appellants' thirteenth assignment of error was objected to on the ground that it was irrelevant, immaterial, and calculated to mislead the jury and prejudice the defendants. These objections were overruled and the testimony admitted. The evidence is to the effect that in 1885 Mrs. Ophelia Wilson went to Texas, saying that she wanted to see her son James Wilson's grave before she died. She brought back with her a few leaves off the grave, which she wanted buried with her when she died. "In 1885, while on a visit to her grandchildren, and while going to Houston on her return, Mrs. Henning, formerly Mrs. Wilson, was thrown from the wagon and broke her arm. Receiving a telegram, her daughter Alice and myself went to Houston from New Orleans and brought her home on her recovery."

The objection was to the whole of the evidence. Some of it might not be admissible, but a part of it was properly admitted. Objections

should have been urged to the objectionable portion, or a request should have been made that its effect be controlled by a charge, but this was not done. The objection went to the entire testimony. A part of it was admissible as tending to show that James Wilson was the son of Ophelia P. Wilson, who is identified by much of the evidence in the record as being the wife of David Wilson, the grantee; and was also admissible as tending to establish that James Wilson was dead. It was material that the plaintiffs should establish the death of James Wilson as a predicate to the introduction of the declarations of James Wilson contained in his deed to Gentry that his father was David.

The plaintiffs offered in evidence, in connection with the testimony of Charles Wilson, the son of James M Wilson, the entries in the family Bible of James M. Wilson. These entries were objected to as irrelevant and immaterial and not sufficiently proven, and calculated to mislead the jury and prejudice the defendants. Charles Wilson testified that he was the son of James M. Wilson; his grandmother was Ophelia Henning or Wilson. "I have with me my father's family Bible. The entries therein shown me are in the handwriting of my father. I do not remember to have seen him write, but have seen his writing, and my mother told me that it is his handwriting. There are some entries there in the handwriting of my mother, and yet some others which I do not recognize. This Bible has been in the family since I can first remember." The following entries were admitted: "James Morrell Wilson and Nancy Artemesia Wilson were married November 3, 1853; James Morrell Wilson was born February 9, 1832." Then follows other entries showing the birth of Mrs. Artemesia Wilson and of the children of her and James Wilson. It was important to prove the date of the birth of James M. Wilson, which appears by this entry in the family Bible to be February 9, 1832. This shows that he was born after the marriage of David and Ophelia Wilson. If the balance of the entries were immaterial, they were harmless.

We do not think there was any error in admitting the photograph of James M. Wilson, which evidence is complained of in the fifteenth assignment of error. We agree with what the appellees say upon this subject on pages 37 and 38 of their brief.

We are of the opinion that the evidence of S. G. Selkirk and Mrs. S. G. Selkirk, H. L. Labatte and J. A. Labatte, as complained of in appellants' sixteenth, seventeenth and eighteenth assignments of error, was admissible. They stated facts bearing upon the question of the mental capacity or competency of the witness A. C. Smith, who had by deposition testified favorably to the defendants, to the effect that one James Wilson was the husband of Ophelia and the father of James M. Wilson. The testimony was not for the purpose of establishing the insanity of the witness Smith, but the evidence of these witnesses was to establish facts tending to show that the mental capacity and the faculty of recollection of the witness Smith was much impaired. This testimony came from witnesses who knew him and were well acquainted

with his condition.  The court admitted in evidence, on behalf of the plaintiffs, the testimony of Mrs. Rayne and Miss Henning, to the effect that they had heard conversations between Mrs. Henning, who was formerly Mrs. Wilson, and Mr. Smith, in which they spoke of James Wilson being the son of Mrs. Henning, formerly Mrs. Wilson, and her husband David Wilson.  Miss Alice Henning testified further that they also spoke of David Wilson as the former husband of her mother, who was Mrs. Ophelia Henning, formerly Mrs. Ophelia Wilson, and that David Wilson was the father of James Wilson.

What occurred in these conversations when Mrs. Henning, formerly Mrs. Wilson, was present was admissible.  The declarations made by her or to which she assented establishing the pedigree of James, or her relationship with David Wilson, were admissible as original testimony. As stated before, she had been dead many years, and these conversations occurred long prior to any controversy about the subject to which the testimony relates.

It is asserted in appellants' twentieth and twenty-second assignments of error that the court refused to give certain charges requested by appellants.  It does appear in bills of exception that the defendant requested certain instructions, but the record does not contain any requested instructions in writing signed by the appellants or their attorneys.  Moore v. Brown, 27 Texas Civ. App., 208; Belcher v. Railway Co., 92 Texas, 599.  Therefore, no error is shown in this respect.

There is no merit in appellants' twenty-first assignment of error. The special issues submitted by the court which are complained of in this assignment were proper questions to be submitted to the jury, or at least, in view of the fact that the evidence clearly demonstrates that the land in question was the separate property of Mrs. Amelia Howland, the findings complained of would not be harmful; but we are of the opinion that the court had the right, if it saw fit to do so, to permit the jury to find the facts upon which they predicated the conclusion that the land was intended to be of the separate estate of Mrs. Howland. The findings of the jury as submitted in this assignment, and as complained of, had a tendency to find facts establishing this issue.

Our findings of fact in effect dispose of the twenty-third, twenty-fifth and twenty-sixth assignments of error.  Further than this statement, we do not feel called upon to pass on the questions presented in the twenty-third asignment of error, as we do not think that that assignment is in accord with the rules.  It embraces more than one separate and distinct question.  Cammack v. Rogers, recently decided by this court.

The so-called two fundamental errors urged in appellant's brief do not go to the merits of the plaintiffs' title or the judgment of the court.

We find no error in the record and the judgment is affirmed.

*Affirmed.*

Writ of error refused.