## CHAPMAN v. KELLOGG et al.
### (No. 360–3197.)

(Commission of Appeals of Texas, Section B.
May 30, 1923. Rehearing Denied
June 27, 1923.)

**1. Deeds ⬉54—Delivery not essential requirement under civil law.**

Under the civil law, delivery of a deed was neither required or permitted.

**2. Deeds ⬉208(4)—Filing deed for record proof of delivery and acceptance.**

The filing of a deed for record under the registration statutes is sufficient proof of delivery and acceptance.

**3. Evidence ⬉372(7)—Certified copy of deed found in papers of clerk's office admissible as ancient record as against affidavit of forgery.**

A certified copy of deed of 1836, found in the "archives" of the clerk's office and recorded in 1845 in the deed records of the county, was admissible under Vernon's Sayles' Ann. Civ. St. 1914, art. 3699, and having been of record for more than 70 years was admissible, under Vernon's Sayles' Ann. Civ. St. 1914, art. 3700, as an ancient record which an affidavit of forgery could not exclude.

**4. Appeal and error ⬉1001(1) — Court of Civil Appeals erred in finding deed to be invalid in view of evidence of its genuineness.**

Where there was evidence to sustain validity of deed and the jury found validity, the Court of Civil Appeals erred in finding the deed to be invalid.

**5. Pleading ⬉304—Party claiming under transfer not properly authenticated for record has burden of removing suspicion cast on it by affidavit of forgery.**

Where a transfer executed in 1838 was not properly authenticated for record in 1845, in view of an affidavit of forgery, one claiming under the transfer had the burden of removing the suspicion cast on it by the affidavit.

**6. Appeal and error ⬉1095—Practice relative to remanding case to trial court stated.**

Where Court of Civil Appeals, in its opinion on reversing a jury finding of title to land, indicates that it would have remanded the case because judgment was against the weight of evidence, if given opportunity to do so, the Supreme Court can only remand the case to the trial court for another trial, even though inclined to affirm the trial court's judgment if it had jurisdiction over all fact questions.

**7. Appeal and error ⬉1177(7) — Rendering judgment by Court of Civil Appeals without remand held error.**

In action involving title to land, where the issue submitted was as to the fact of execution of certain deeds and rescission of one of them and retransfer to grantor, on appeal from judgment in defendant's favor it was error for the Court of Civil Appeals to reverse the judgment without remand on the theory that there was no evidence to sustain the judgment and that if the case were remanded defendant could not secure proof of the kind held necessary.

**8. Evidence ⬉324(3)—Evidence of reputation of ownership to land and deed therefor held admissible.**

In action involving title to land, evidence of a witness that there was information and knowledge in their family that witness' father owned the land involved, and that it was understood that he was deeded the land in payment for legal services, was admissible, not being offered as evidence of title, but only as a circumstance showing an assertion of ownership under the deed.

**9. Judgment ⬉497(1)—Recitals in judgment in collateral attack not contradicted by other portions of record.**

Where judgment on its face recited due and legal service of citation, such recitals, in collateral attack, cannot be contradicted by other portions of the record.

**10. Judgment ⬉638 — Judgment of another county involving title to land in question held admissible.**

In action involving title to land, where defendant claimed under a transfer to C. in 1838, a judgment in another county involving land in that county and land in county of venue, in which the unknown heirs of C. were made parties defendant and were represented by an attorney appointed by the court, was admissible.

**11. Process ⬉103—Citation by publication to unknown heirs must be in county where land situated.**

In actions involving title to land, where service by publication is necessary, citations by publication to unknown heirs must be published in the county where the land is situated.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Trespass to try title by Mrs. Rose Kellogg and others against J. R. Chapman. Judgment for defendant was reversed and rendered by the Court of Civil Appeals (201 S. W. 1096), and defendant brings error. Judgments of the district court and Court of Civil Appeals reversed, and cause remanded for new trial.

Terry, Cavin & Mills, of Galveston, Davis & Ramsey, of San Augustine, and Oliver J. Todd, of Beaumont, for plaintiff in error.

W. D. Gordon, of Beaumont, for defendants in error.

POWELL, J. This is an action in trespass to try title instituted on the 15th day of August, 1915, in the district court of San Augustine county, Tex., for the recovery of the A. G. Kellogg one-fourth league survey in said county. The suit was brought by the Kelloggs as heirs of the original grantee.

The defendant, J. R. Chapman, in the trial court, answered by a plea of general denial and not guilty. As found by the district court, Chapman had a complete chain of title from the sovereignty of the soil, if the two conveyances to be hereinafter discussed

were valid and genuine. There was no possession of the land and no limitation question is involved.

The case was tried before a jury, to whom was submitted three special issues as follows:

"Question No. 1: 'Did or did not A. G. Kellogg execute and deliver to William Coote, as a conveyance, the instrument purporting to be from Kellogg to Coote, and was it accepted by William Coote as a conveyance to him of the title to the land in controversy? If you find the affirmative of the issue, you will answer, "Yes." If you find the negative of this issue, you will answer, "No." '

"To this question the jury answered, 'Yes.'

"Question No. 2: 'Was or not the purported transfer from William Coote to Terry H. Cahal purporting to convey to Terry H. Cahal all the right, title, and interest of Coote to the land in controversy a genuine instrument of conveyance from William Coote mentioned in the Kellogg deed? If you answer this in the affirmative, the form of your answer may be, "Yes." If you answer in the negative, the form of your answer may be "No." '

"To this question the jury answered, 'Yes.'

"Question No. 3: 'Did or did not William Coote, prior to the 28th of February, 1838, rescind the deed from Kellogg to himself or retransfer to Kellogg, or his estate, the land in controversy? If you determine this in the affirmative, let your answer be, "Yes." If you determine this in the negative, let your answer be, "No." '

"To this question the jury answered 'No.' "

In connection with aforesaid issues the trial court read a charge explanatory of the questions submitted, containing definitions, etc. The charge was accepted by counsel for all parties. No objection was urged to it, nor was any special charge requested, except one by counsel for Chapman. The record does not show whether the latter was given to the jury or not. At any rate, no objection to it is disclosed by the record. Therefore the case went to the jury upon a charge entirely satisfactory to all parties. No one asked a peremptory instruction, so far as the record discloses. The charge was most favorable to the Kelloggs, placing the burden of proof upon Chapman to establish the genuineness of the disputed deeds.

But, faced by jury findings which completely established the Chapman title, as above shown, counsel for the Kelloggs, in motion for a new trial, vigorously attacked the verdict as being without support in the record. The trial court overruled that contention and entered final judgment in favor of Chapman for the land in controversy.

Upon appeal to the Court of Civil Appeals, that court, in an opinion by Justice Brooke, reversed the judgment of the trial court and rendered judgment in favor of the Kelloggs for the land in suit. See 201 S. W. 1096.

The Court of Civil Appeals at one place states there is no evidence in the record to support the trial court's judgment. Then, in another place, that court says the judgment has no sufficient basis in the record. At any rate, it overthrew the verdict of the jury and rendered judgment as aforesaid. It not only held that Chapman had not sustained his title, but that he could not do so and should not be given another chance to do so. This was a rather unusual decision, in the latter regard, when the title depended upon the validity of two deeds which could be established by witnesses who might be located. We shall allude hereafter to the action of the Court of Civil Appeals in rendering rather than remanding this case, even if that court had been correct in its application of the law to the facts before it.

In an effort to eliminate the deed from Kellogg to Coote and the one from the latter to Cahal, Attorney Gordon, on behalf of the Kelloggs, filed an affidavit of forgery, attacking the same for lack of genuineness. This affidavit was followed up on the trial by various objections by affiant to the admissibility of aforesaid conveyances when they were offered in evidence by counsel for Chapman.

Counsel last above mentioned placed C. A. Beard, county clerk of San Augustine county, on the stand. He testified that there was a set of papers in his office and known as the "archives"; that he had custody of such archives, among which was an original deed from Kellogg to William Coote, conveying the land in controversy. This original deed from these archives was offered and admitted in evidence. It read as follows:

"A. G. Kellogg to Coote & Terry H. Cahal. Filed March 17, 1845. Selloe Tercero Dos Reales the Free State of Coahuila and Texas, Municipality of San Augustine. Par all Berneodo 1834 y 1836. This indenture, this third day of January, in the year of our Lord one thousand eight hundred and thirty-six, between Albert G. Kellogg, of the municipality and state aforesaid of the one part, and William Coote, of the same place, of the other part, witnesseth: That the said Albert G. Kellogg, for and in consideration of the sum of two hundred dollars to him in and paid at and before the sealing and delivering of these presents, the receipt whereof is hereby acknowledged, hath granted, bargained, sold, and conveyed, and do by these presents grant, bargain, sell, and convey, unto the said William Coote, his heirs and assigns, all my right, title, and interest that I now have, or that the laws may entitle me to afterwards, to a tract or parcel of land lying and being in the municipality aforesaid, situated on the west bank of the Ayish bayou, fronting on said stream and joining William Coote's survey on the southwest, containing one-quarter league, being the aforesaid Albert G. Kellogg's headright of land which he obtained under the colonization law from George Antonio Nixon, commissioner for Lorenzo De Zavala's colony, said grant being dated the eighth day of June in the year eighteen hundred and thirty-five, to have and to hold

said quarter league of land unto him the said William Coote, his heirs and assigns, forever, together with all and singular the rights, members, and appurtenances thereof to the same in any manner belonging, to his and their own proper uses and benefit forever in fee simple. And the said Albert G. Kellogg, for himself, his heirs and executors and, administrators, the said bargained land unto the said William Coote, his heirs and assigns, forever, will warrant and forever defend the right and title thereof against themselves forever.

"In witness whereof the said Albert G. Kellogg hath hereunto set his hand and seal the day and year above written. Signed, sealed, and delivered in the presence of David Brown, assisting witnesses. Samuel Stivers.

"[Signed] Albert G. Kellogg. [Seal.]"

Chapman's counsel then offered in evidence a certified copy of aforesaid archive, in the exact words of the original, and certified as follows:

"The State of Coahuila and Texas, Municipality of San Augustine.

"I, John G. Love, primary judge in and for said municipality, certify the foregoing is a true copy of the original in the archives of the primary judge's court under my charge.

"Given under my hand this 2d day of February, A. D. 1836.

"[Signed] John G. Love, Primary Judge."

Attorneys for Chapman next offered in evidence a conveyance indorsed upon and recorded with said certified copy, by terms of which transfer the said William Coote sold and conveyed all the land described in the certified copy to Terry H. Cahal, which said transfer, with the proof thereof, is as follows:

"State of Tennessee, Hardin County.

"Know all men by these presents, that I have, for a valuable consideration, transferred all my right and title to land described in the foregoing deed to Terry H. Cahal, of the county of Murry and state of Tennessee.

"Done this twenty-eighth day of February, eighteen hundred and thirty-eight, in presence of Austin Miller, George D. Morrow.

"[Signed] William Coote. [Seal.]

"County of San Augustine, the Republic of Texas.

"I, Charles Epps, clerk of the county court of said county, do hereby certify that William Lakey, a citizen of said county, and known by me to be a man of strict veracity and probity, appeared before me and after being duly sworn according to law says that the signature of William Coote to the above and foregoing transfer from William Coote to Terry H. Cahal is the true and genuine signature of the said Coote to the best of his knowledge and belief, being well acquainted with his handwriting and having often seen him sign his name.

"Given under my hand and seal of office this 17th day of March, A. D. 1845.

"[L. S.]                    Charles Epps,
"Clerk County Court, San Augustine County."

The certified copy last referred to, including the transfer to Cahal, was recorded in San Augustine county, Tex., March 17, 1845.

Did the trial court err in admitting aforesaid documents in evidence, especially in the face of an affidavit of forgery?

Aforesaid transfer from Kellogg to Coote—

"is in the customary form of the civil law conveyances executed before the primary judge acting as notary with the usual attesting witnesses. It was executed before the adoption of the common law in Texas, and before any change had been made from the civil law mode of transfer. The first registration law of the Republic was passed in December following the execution of this instrument in January, 1836. There being no place to record the instrument, this conveyance, like all others executed contemporaneously with it, was retained by the notary in his archives, and the certified copy was given to the purchaser. It is known that this original was considered by the primary judge as a record of his office, for he so certified on the 2d day of the following February after it was executed."

The Court of Civil Appeals seemed to lose sight of the fact that this conveyance was one under the civil law. It is not contended by counsel for Chapman that a deed executed since 1840, found in the office of the county clerk and unrecorded, is admissible in evidence in absence of proof of its execution and delivery. And yet all the cases relied upon by the Court of Civil Appeals refer to deeds not executed under the civil law or filed with a primary judge previous to the first Monday in February, 1837.

[1] The Court of Civil Appeals seems to assume that the delivery of the deed—

"was an essential requirement of an instrument executed while the civil law was in force on January 3, 1836, when in truth and in fact delivery was neither required or permitted under the civil law, and the original was required to be retained by the officer just as was done in this case. Partida 3, title 5, law 6; Hall's Mexican Law, par. 1494; Hall's Mexican Law, par. 2097; Domat's Civil Law, 197."

[2] The Court of Civil Appeals does admit that the filing of a deed for record under the registration statutes would be sufficient proof of delivery and acceptance of the deed by the grantee. So it would. But we submit that the action taken by Kellogg and Coote in the instant case in 1836, before the Republic of Texas had any registration laws, was just as effective in establishing acceptance of the deed. In other words, these parties did just what the law of that day provided. This old deed and certified copy thereof reflect nothing to cast suspicion upon their genuineness.

[3] The certified copy of the old archive was admissible under the following authorities: Article 3699, Vernon's Sayles' Tex. Statutes; 1 Gammel's Laws of Texas, 540; Hartley's Digest, art. 260; Hartley's Digest, art. 2761; Hartley's Digest, art. 746; Hubert v. Bartlett's Heirs, 9 Tex. 97; Andrews v.

Marshall, 26 Tex. 216; Cowan v. Williams, 49 Tex. 395; Storey v. Flanagan, 57 Tex. 655; Broxson v. McDougal, 63 Tex. 193; Van Sickle v. Catlett, 75 Tex. 407, 13 S. W. 31.

Article 3699 of our statutes aforesaid has been in force in Texas since 1846, and reads as follows:

"Copies of all conveyances and other instruments of writing between private individuals, which were filed in the office of any alcalde or judge in Texas previous to the first Monday in February, 1837, shall be admissible in evidence, and shall have the same force and effect as the originals thereof; provided, such copies are certified under the hand and official seal of the officer with whom the originals are now deposited."

The old archive in question meets every requirement of aforesaid statute. It is a conveyance between private individuals filed in the office of a judge in Texas prior to the first Monday in February, 1837.

· As we read the authorities, the primary judge was made a notary public by the Act of Consultation in 1835 and was required, by the act of December 20, 1836, to deposit all instruments with the county clerk, except such as he had been required to transmit to the district court or justice of the peace. ·

In the case of Storey v. Flanagan, 57 Tex. 655, there was a deed to Brockfield, purporting to have been executed October 14, 1835. Judge Stayton held:

"We deem it proper to say that the court did not err in admitting in evidence the certified copy of the conveyance to Brockfield. It was an archive in the office of the clerk of the county court of Nacogdoches county, as certified by him, and a certified copy was admissible without proof of the execution of the original. Pasch. Dig. 3717; Hubert v. Bartlett, 9 Tex. 102; Andrews v. Marshall, 26 Tex. 216; Hooper v. Hall, 35 Tex. 86."

Again, the same judge speaks, in the case of Van Sickle v. Catlett, 75 Tex. 404, 13 S. W. 31, as follows:

"To show title in William G. Logan appellees offered in evidence a certified copy of an act of sale, which was an archive in the office of county clerk for Nacogdoches county, the land being in that municipality when the act, which bore date September 5, 1835, was executed. That paper purported to convey the east half of the Piburn league to Wm. G. Logan and J. K. Allen, and was objected to because the copy of the original, usually given to vendees, was not produced or its execution proved. This objection was properly overruled. Andrews v. Marshall, 26 Tex. 216; Cowan v. Williams, 49 Tex. 395; Broxson v. McDougal, 63 Tex. 197; Rev. Stats. art. 2256."

Not only was the certified copy of this archive admissible under the authorities above listed, but it was admissible under article 3700 of our statutes. This certified copy was made February 2, 1836, and record-ed in 1845 in Book "F," page 451, of the Deed Records of San Augustine county. It was properly of record there, and, having been of record for more than 70 years at the time of this trial, it constituted an ancient record.

Hartley's Digest, art. 2761 (act of June 19, 1839), provides as follows:

"Be it further enacted, that copies of all deeds, etc., when the originals remain in the public archives, and were executed in conformity with the laws existing at their dates, duly certified by the proper officers, shall be admitted to record in the county where such land lies."

As said by counsel for Chapman:

"This instrument comes within every provision of the above statute, because (a) it is a copy of a deed; (b) it remained in the public archives; (c) it was executed in conformity with the law existing in January, 1836; and (d) was duly certified by the county clerk, who was its lawful custodian. Hartley's Digest, art. 260."

Having been lawfully recorded, as aforesaid, an affidavit of forgery would not exclude it.

In the case of Emory v. Bailey, 111 Tex. 337, 234 S. W. 660, 18 A. L. R. 901, our Supreme Court, in an opinion by Justice Greenwood, discussed the admissibility of a certified copy of an ancient record against which an affidavit had been filed. He said:

"So, we hold that where an instrument was duly recorded soon after its date, and has remained of record for more than 30 years, and where nothing is disclosed upon its face, as recorded, to impeach its genuineness, article 3700 of the Revised Statutes requires a certified copy thereof be admitted in evidence, under the statutory affidavit, filing and notice of filing, without the necessity of further proof of the original's execution or genuineness."

We quote still further from Judge Greenwood's opinion, supra, as follows:

"Hence, the certified copy was that of a deed duly recorded for more than thirty years. Defendants in error insist that to render such a certified copy admissible in evidence, against an affidavit charging the original to be forged, it must be accompanied by some corroborative proof of the genuineness of the original.

"The making and filing of the affidavit of forgery did not deprive plaintiffs in error of the right, expressly conferred by article 3700 of the Revised Statutes, to have 'a certified copy of the record * * * admitted in evidence in like manner as the original could be,' on filing proper affidavit of loss of, or inability to procure, the original deed, and after proper filing and notice of filing of the certified copy.

"An original deed is admissible in evidence as an ancient instrument, when the following requirements are satisfied: First, when it comes from the proper custody; second, when it is free from suspicion; and, third, when it is shown to have been in existence more than 30 years.

"The decision in Ammons v. Dwyer, 78 Tex. 649, 15 S. W. 1049, to 651, established the rule that when the foregoing requirements are fulfilled, it is not necessary, in order to secure the admission of the ancient deed, to go on and adduce other proof in corroboration of the deed's genuineness, such as possession or claim thereunder. The rule, as laid down in Ammons v. Dwyer, supra, has been frequently and properly followed. Holt v. Maverick, 5 Tex. Civ. App. 650, 23 S. W. 752; Kennard v. Withrow, 28 S. W. 227; Timmony v. Burns, 42 S. W. 134; Woodward v. Keck, 97 S. W. 854.

"Since the original deed would have been admissible, on its production from proper custody, free from anything suspicious on its face, on proof of its existence for more than 30 years, we think no sufficient reason can be given for refusing to admit in like manner the certified copy, offered by plaintiffs in error."

Measured by the test laid down by Judge Greenwood, the original deed (archive) was admissible. It had been in existence for more than 30 years; it was free from any suspicion on its face; it came from the proper custody. Under the civil law the deed had taken the usual course. Not only so, but, since the certified copy of the original was lawfully and duly of record for more than 30 years, it was also admissible in evidence under the rule announced in the case of Emory v. Bailey, supra.

[4] But counsel for the Kelloggs insist that, even if the archive and its copy were admissible, in evidence, the mere admission did not prove them; that the affidavit of non est factum cast the burden of proof on those offering the deed and its copy to prove their genuineness. This question of the effect of an affidavit in casting the burden of proof has been most ably and correctly discussed by Chief Justice Stayton in the case of Stooksbury v. Swan, 85 Tex. 563, 22 S. W. 963. The entire opinion is instructive and lays down many correct rules. We quote a few of these rules as follows:

"Whether testimony is admissible is addressed to and must be determined by the court; but the weight to be given to corroborative evidence on which a deed is admitted as an ancient instrument, including the appearance and age of the paper itself, as well as to all evidence introduced and tending to show that the paper is not genuine, must be left for the ultimate decision of the jury under all the relevant testimony permitted to go before them."

"It is true, where a deed is offered as an ancient instrument, that an affidavit of forgery does not make it necessary, in order to entitle it to admission, that proof other than such as is requisite in such cases should be made; but the question of admissibility is in all cases for the court, while the weight to be given to the evidence on which it is admitted, as well as to the instrument itself, in so far as the question of genuineness goes, where there is a conflict in the evidence on this point, must in all cases ultimately be left to the decision of the jury."

"In cases in which evidence is introduced by the respective parties, tending to prove and to disprove the issues of fact involved in a cause, occasion does not arise for declaration upon whom the burden of proof rests; for the question then becomes merely one of preponderance of evidence, which is for the decision of the jury under all the evidence introduced, whether this be direct or circumstantial. * * *

"If on proper and uncontroverted testimony a deed be admitted as an ancient instrument, then, in the absence of evidence, subsequently admitted, tending to show that it is not genuine, a court might, without violation of the statute, instruct a jury to consider the execution of the instrument proved."

Applying these rules to the original archive and its copy, the trial court evidently concluded that, even as against an affidavit of forgery, the documents were admissible. The jury, ultimately passing upon the same evidence, concluded likewise. There is evidence in the record to sustain their finding. The evidence unquestionably showed a delivery of the deed and an acceptance thereof by Coote. At any rate, we do not hesitate to say that it all but conclusively showed it. The Court of Civil Appeals clearly erred in finding there was no evidence to sustain the jury's finding that this deed was valid in every respect. In fact, we are very much inclined to think that there was no evidence, subsequently admitted, tending to show that the deed to Coote was not genuine and binding in every particular. Therefore, under one of the rules just quoted, the trial court should probably have charged the jury to consider that conveyance binding. The record shows no request for a peremptory instruction by any of the parties, as already stated. They all seemed to agree that the issues be submitted to the jury. Their verdict was supported by the evidence, so far as this deed was concerned. To say the least of it, the evidence clearly raised the issue submitted to the jury.

[5] Counsel for Chapman contend that a certified copy of the transfer from Coote to Cahal, heretofore set out in full by us, was admissible in evidence, not only as a muniment of title, but as a circumstance showing that the transfer was genuine.

It is doubtless true that the transfer had been of record since 1845. But it is likewise true that the transfer was not properly authenticated for record. Therefore a certified copy from this record is not admissible as a muniment of title, unless article 3700 of Vernon's Sayles' Revised Civil Statutes of Texas, as amended in 1907, renders it so. We do not think it necessary to decide whether or not the curative act aforesaid applies to this case. In view of the affidavit of forgery, we think counsel for Chapman had the burden of removing the prima facie suspicion cast upon the deed by the affidavit. This they attempted to do. They succeeded in doing so to the satisfaction of the trial court and jury. It cannot be contended, and is not by

any of the attorneys in the case, that the copy of the deed to Cahal and its ancient record were not admissible as circumstances to show the execution of the original. It was admitted in evidence, and the burden of proving it was on Chapman, in any event. Consequently, practically speaking, it makes no difference to Chapman whether it was admissible as a muniment of title as well as a circumstance as aforesaid. Counsel for Kellogg complains that the verdict of the jury finding this deed to be genuine was not based upon sufficient evidence. The Court of Civil Appeals sustained that contention and rendered judgment on such finding. Suffice it to say, in view of another trial, that the circumstances in evidence did raise this issue which was submitted to the jury by the trial court without objection from any of the attorneys. We think the jury's finding in favor of the genuineness of this deed found sufficient basis in the record.

But, if it were necessary to construe the curative act of 1907 relating to defective acknowledgments, we would be inclined to hold that this copy of the deed from Coote to Cahal was admissible under that act. In discussing this act, Judge Reese, in the case of Sims v. Sealy, 53 Tex. Civ. App. 518, 116 S. W. 631, says:

"We are not inclined to think that the certificate of proof of the instrument for record was insufficient to admit it in evidence without proof of its execution under the statute, but it was executed in 1838, and was admissible as an ancient instrument without proof of its execution. It appears from the record that the original instrument was offered in evidence, but, if in fact a certified copy was offered, the defect in the certificate of proof for record was cured, and the certified copy properly admitted under the provisions of article 2312, Rev. St. 1895, as amended by the act of 1907. Acts 30th Leg. 1907, c. 165, p. 308. This was not affected by the fact that appellant Padgett had acquired his interest before the passage of this act. The statute in question relates to a rule of evidence in which no one has a vested right. Rous v. State, 31 Tex. Cr. R. 597, 21 S. W. 764, 37 Am. St. Rep. 834. The act in question by its terms does not apply as against a claim adverse to or inconsistent with that evidenced under the instrument, which has been asserted during the first 10 years that the instrument has been upon record. The court finds that this instrument has been upon record since 1838, and that no adverse claim has been asserted against that conveyed by it until the execution of the power of attorney to Padgett in 1907. There was no error in admitting the instrument in evidence. The first assignment of error presenting the point is overruled."

It is conceded that neither Coote nor any of his heirs ever asserted any adverse claim against the Cahals. But counsel for the Kelloggs claim that is not the test; that the curative act does not apply if any one, although entirely foreign to the deed defectively acknowledged, sets up any adverse or inconsistent claim to that being asserted by the grantee in the deed not properly authenticated for record; and, in line with that contention, they show that certain Cartwrights were claiming the land between 1845 and 1855. The deed went to record in 1845. This particular situation does not seem to have been before the court when Judge Reese wrote the decision above cited, but we think the Legislature intended to provide that, if the grantors in a deed defectively acknowledged did not set up any adverse claim within 10 years after the deed went to record, the defective acknowledgment would be cured. Otherwise, the legislation would not result in any very substantial relief, since very few tracts of land have escaped the ravages of interlopers and others who would take it with no show of title.

The deeds from Kellogg to Coote and from the latter to Cahal were admissible in evidence. The trial court held them so. The jury sustained the court in that ruling. They found both deeds genuine. The issues were submitted to the jury. Counsel for the Kelloggs did not object to their submission. They made no contention that the issues were not raised by the evidence. It is reasonable to assume that these able attorneys were not at all certain at that time that they were entitled to a peremptory instruction against Chapman upon either of said deeds. And yet when the jury returns a verdict against the Kelloggs the attorneys then claim there is no evidence in the record sustaining the jury's findings upon any of these very issues. The trial court sustained the jury's findings when attacked. The Court of Civil Appeals, however, not only reversed said findings, but saw fit to render judgment for the Kelloggs.

[6] We think, as already stated, that the findings of the jury have considerable basis in the record, and we cannot recommend an affirmance of the judgment of the Court of Civil Appeals. On the other hand, we cannot recommend an affirmance of the trial court's judgment. The finding that there is no evidence in the record to sustain the trial court's judgment ordinarily includes the lesser finding that said judgment is against the weight of the evidence and that the same court would have remanded the case because of the insufficiency of the evidence, if that had been necessary. Such a remand is binding upon the Supreme Court. But in this case the Court of Civil Appeals not only finds that there is no evidence to support the jury's findings, but also that there is "no sufficient support in the evidence" for the judgment entered by the trial court. A careful reading of the opinion of the Court of Civil Appeals leaves no doubt but that said court would have remanded the case because the judgment was against the weight of the testimony, if given an opportunity to do so. Therefore the Supreme Court can only remand the case to the trial court for another

trial, even though it would be inclined to affirm the judgment of the trial court, if it had jurisdiction over all fact questions. We passed upon a similar' situation some two months ago in the case of Barron v. Railway Co. (Tex. Com. App.) 249 S. W. 825. In that case we cited the following authorities: Lee v. Railway Co., 89 Tex. 583, 36 S. W. 63; Choate v. Railway Co., 91 Tex. 406, 44 S. W. 69; Lilienthal v. Indemnity Exchange (Tex. Com. App.) 239 S. W. 906; Turley v. Campbell (Tex. Com. App.) 241 S. W. 682; Brown v. City Service Co. (Tex. Com. App.) 245 S. W. 656.

[7] Not only must this case be remanded to the trial court for the reason just stated, but it should be remanded for another reason. As already shown, this case was tried upon certain theories to which neither side objected. The trial court put all possible burdens of proof upon Chapman. Assuming that burden, without objection, Chapman's counsel went to the jury fighting for a verdict upon three issues which were submitted by the court without objection from counsel for the Kelloggs. Chapman won on every issue. That being true, we think it was error on the part of the Court of Civil Appeals to cut Chapman off without a single chance to make out a case upon the theories promulgated by it. Even if that court had been correct in its decision, it should have given Chapman a chance to prove his case after fully developing it, if possible, under the rules so laid down. Therefore, under the facts of this case, we would not hesitate to recommend a remand of this case, even though we agreed with the holdings of the Court of Civil Appeals. Appellate courts should hesitate to hold that a litigant cannot secure proof of the kind here involved. For authorities sustaining our view that the Court of Civil Appeals should not have gone further, in any event, than to remand this case, see: Smith v. Patton (Tex. Com. App.) 241 S. W. 109; Faulkner v. Reed (Tex. Com. App.) 241 S. W. 1002. Both these opinions were by this section of the Commission of Appeals, and we have there collated many authorities in point.

The trial court admitted all evidence offered by the attorneys in the case. In view of another trial, we will state that we think no serious question as to the correctness of that court's rulings in that connection can be raised, with the exception of the points we shall now discuss.

[8] Mrs. Mary Cahal Osborne, daughter of Terry H. Cahal, testified:

"There was the information and knowledge in the family that my father owned the body of land in Texas inquired about in this interrogatory [land in suit]; it was talked of and discussed in the family."

Again, she said:

"I always understood my father was deeded the land in payment of a fee for his services in representing the party [Coote] deeding him the land."

She testified her father's papers were lost when his home burned in 1849.

Counsel for the Kelloggs made several objections to this evidence, mainly, that the same was hearsay and merely an opinion of the witness. This evidence was offered, not as evidence of title, but only as a circumstance showing an assertion of ownership by Cahal under the deed from Coote. Such circumstance would, if believed by the jury, have much probative force in establishing the genuineness of this deed into Cahal. Counsel for plaintiff in error contend that this evidence was admissible under several cases, and particularly that of Brewer v. Cochran, 45 Tex. Civ. App. 179, 99 S. W. 1033. In that case Judge Reese, discussing admissibility of this character of evidence, said:

"In this state it has been held that actual possession under an alleged deed is not an essential element of proof of the execution of such deed by circumstances, or to create an inference or presumption of fact from such circumstances, of the execution of such deed. Garner v. Lasker, 71 T. R. 431; Baldwin v. Goldfrank, 88 T. R. 257. Where then, under such rule it is sought to establish such deed from circumstances, and among such circumstances are long and continuous claim of title and ownership, which is not shown to have been disputed by any adverse claim, with such indicia of ownership by payment of taxes, successive conveyances, etc., as are here present, we can see no objection to the application of the rule referred to, to the admission of evidence and declarations made by persons claiming such title and ownership, which serve to explain such claim in cases where the parties are all dead, and length of time, by destroying other, perhaps more satisfactory, proof, has created the necessity of a resort to the evidence of such declarations. To the evidence of such claim of title to land as is afforded by selling and conveying it, it might be objected that it was self-serving, but we think that it has never been held that such fact cannot be resorted to as evidence of a claim of title thereto, when a resort to circumstantial evidence is had to establish the execution of a deed or the presumption of a grant. Such claim of title so evidenced is admitted, not as direct proof of title, but to show claim of title, which is a circumstance which may be considered in such cases, where the resort to such evidence becomes necessary."

Not only was a writ of error denied by our Supreme Court in the case of Brewer v. Cochran, supra, but said case was expressly commended by the court in the case of Magee v. Paul, 110 Tex. 470, 221 S. W. 254. In the latter case Judge Greenwood says:

"As evidence of a claim of ownership, recitals in ancient instruments are admissible, over the objection that they are hearsay or self-serving. Dunn v. Epperson, 175 S. W. 841; Sandmeyer v. Dolijsi, 203 S. W. 118. The principal reasons which forbid the exclusion of such

recitals have been stated with such clearness and force in a series of opinions by the lamented Judge Reese as to obviate the necessity for further discussion. Brewer v. Cochran, 45 Tex. Civ. App. '179, 99 S. W. 1033; Frugia v. Trueheart, 48 Tex. Civ. App. 513, 106 S. W. 739; Hirsch v. Patton, 49 Tex. Civ. App. 499, 108 S. W. 1017; Thompson & Tucker Lumber Co. v. Platt, 154 S. W. 270."

It will be remembered that there was no possession of this land by the Cahals. Counsel for, defendants in error do not seem to contend that these declarations of Mrs. Osborne would not be admissible were the other evidences of ownership in this case as strong and convincing as they were in the Cochran Case. But, they say the facts in the instant case do not measure up to that test. If they do, upon another trial, we think the declarations should be admitted for what they are worth. We are glad to see the courts of our state liberalizing the rules of evidence in admitting declarations of ownership for such purposes as are present in this case. In this connection we are in hearty sympathy with Chief Justice Willie, when, in the case of Hickman v. Gillum, 66 Tex. 314, 1 S. W. 339, he says:

"As to all objections made to the relevancy of testimony to prove title in the Maria Josefa Delgado under whom defendants claim, it is fully shown by the bills of exception, that this testimony was rejected by the district judge as evidence of title, but was permitted to go to the jury, only as evidence of an assertion of the claim to the land by the defendants and those under whom they claimed, and of the exercise of ownership over it by them. Whilst the fact that a party asserted that land belonged to her would be no evidence of title, yet it would be the best possible evidence that she claimed it. And when, as in this case, the grantee of land has a name which is borne by two persons, the fact that one of these has claimed the land continuously from the date of the grant, and exercised acts of ownership over it for a long series of years, and the other has done nothing of the sort during the whole of the time, affords strong evidence that the former was the person intended to be named in the grant. If such facts are to be excluded, especially when, after a lapse of a long period of time, all proof of the identity of the grantee, through witnesses having a personal knowledge of the facts attending the grant, is lost, the jury must necessarily be deprived of almost all proof whatever upon the subject."

In the case at bar affidavits of forgery were lodged against deeds more than 70 years old when the affidavits were filed. The genuineness of such ancient deeds being involved, circumstances must be largely relied upon. The courts should be liberal, as they have been, in admitting all such circumstances, as did the trial court in the case at bar, for what they are worth. The jury can be counted upon to weigh the circumstances, as they did in this case.

[9] The other evidence question which seems to present difficulty is that relating to the admissibility of a certain judgment of the district court of Hardin county affecting title to the land in suit. The Kellogg heirs, plaintiffs in the case at bar, decided to go down into Hardin county and sue for title to the same tract of land involved here. The suit involved not only above land in San Augustine county but a tract in Hardin county also. There were several defendants in the case, including the unknown heirs of William Coote. These unknown heirs did not appear and make. answer. Thereupon, as shown by the judgment, an attorney in Hardin county was appointed to represent all of said unknown defendants. Upon a trial plaintiffs recovered judgment against all defendants. The judgment was recovered July 21, 1914, and recorded in San Augustine county July 7, 1916, just a few days before the two years expired in which the unknown defendants could have filed a motion for a new trial, had they promptly discovered the deed when placed of record. This judgment contains the recital that all the defendants "had been cited in terms of law" and that "all requirements of the law had been complied with."

This judgment may be offered in evidence again. The trial court excluded it before. The Court of Civil Appeals did not find it necessary to pass upon this action of the district court. The following objections were urged against its admission on the trial:

"(1) The district court of Hardin county was without jurisdiction to try the title to the land in controversy, because the land is located in San Augustine county and not in Hardin county, and no defendants in said litigation appeared or answered in person or by any one authorized to waive their right to be sued in the district court of San Augustine county; the language of the. statute being that actions for the recovery of land must be brought in the county in which the land is situated.

"(2) Because no valid citation was ever run, and we offer in connection with the objections a complete transcript from the records of Hardin county, showing everything that was done in the proceeding from the start to finish, for the purpose of showing that no valid citation was ever run by publication or otherwise, in this, that it is expressly provided by the act of 1909 of the Legislature of the state of Texas that in all actions involving title to land citation by publication must be published in the county in which the land is situated. These proceedings show that the only publication was in a Sour Lake paper in Hardin county, and there was no publication of citation, and therefore no publication whatsoever, which involved any land in San Augustine county.

"(3) Because the petition and judgment insufficiently described the property.

"(4) Because the petition does not set up the nature of the plaintiffs' claim, nor the nature of the claim of the adverse party, as required by law, but is merely in the ordinary form of the statutory action of trespass to try

title, which is wholly insufficient to warrant any recovery as against any unknown owner.

"(5) Because there was never any proper affidavit on which any citation by publication could have been made.

"(6) Because there is no valid return of the officer purporting to have published the citation in the Sour Lake paper.

"(7) Because there was absolutely no evidence of any kind whatever offered in support of the title; the only purported evidence being ex parte affidavits offered on that trial.

" 'We further object to it because, as shown by the record, there was no service of any kind whatsoever on W. H. Pearson, and no citation served on him.

" 'In connection with our objections we offer the balance of the proceedings in that case, except the judgment, for the purpose of showing the grounds upon which the objections are made, which proceedings are as follows: "Plaintiff's original petition; affidavit for publication; citation by publication with officer's return; affidavit of Annie L. Miller; affidavit of Rose Kellogg; statement of facts; clerk's certificate" —which proceedings are shown by Exhibit H attached to the statement of facts herein, which is hereby referred to and made a part hereof.' "

It will be observed that most of these objections relate to failure of proper service upon these unknown heirs. In their brief in the Court of Civil Appeals, counsel for Chapman do not seek to justify the exclusion of this judgment upon any other ground than the fact that the papers in the case show a failure to comply with the requirements of the law as to service by publication upon unknown heirs. This contention of counsel cannot be sustained. This is a collateral attack upon a judgment of a court of competent jurisdiction. The judgment on its face recites due and legal service of citation. These recitals in the judgment in collateral attack cannot be contradicted by other portions of the record. The judgment in this respect imports absolute verity. In this connection we quote as follows from the case of Martin v. Burns, 80 Tex. 676; 16 S. W. 1072:

"Where the case is within the jurisdiction of the court and no fact appears affirmatively in the record sufficient to defeat the jurisdiction, evidence aliunde, even where the judgment is silent as to the process or its service, will not be heard to contradict the presumption of regularity or to establish a fact outside of the record, for the purpose of showing that jurisdiction over the person did not in fact attach and thus impeach the judgment. If the judgment itself finds and recites a valid notice, or citation and service, that controls the balance of the record; otherwise if it recites an invalid citation, or names the precise character thereof. If the judgment is silent, then the whole process in the record may be examined. This is as far as the courts can go when the proceeding is collateral. These rules of decision are too well established in this state to need any further discussion. Murchison v. White, 54 Tex. 85; Treadway v. Eastburn, 57 Tex. 209; Fowler v. Simpson, 79 Tex. 611; Wilkinson v. Schoonmaker, 77 Tex. 615, and authorities cited."

The case just cited was followed in the case of Hopkins v. Cain, 105 Tex. 591, 143 S. W. 1145.

In the case of Hardy v. Beaty, 84 Tex. 562, 19 S. W. 778, 31 Am. St. Rep. 80, the court says:

"In construing the effect of judgments rendered upon constructive service by publication, this court, in the case of Stewart v. Anderson, 70 Tex. 590, held, that the same conclusive effect is given to such judgments as those rendered upon personal service; that a like presumption will obtain in the one case as in the other."

It follows, from what we have said, that we think the trial court erred in looking to the papers in the case in Hardin county, other than the judgment itself, to contradict the recitals in the latter.

[10] But it was also contended in the trial court that the judgment was void because it recovered in Hardin county land located in San Augustine county. Counsel for the defendants in error here cite a case directly in point to the contrary. We refer to the case of Houston Oil Co. v. Bayne (Tex. Civ. App.) 141 S. W. 544. In that case Judge Reese holds:

"Under the first assignment of error, appellant presents the proposition that the judgment in the case of Wooters, Administrator, v. Unknown Heirs of Seaton, is void, on the ground that the land sued for was situated in Hardin county, and the district court of Houston county had no jurisdiction. Appellant relies upon section 14 of article 1194, R. S. 1895, which is as follows: 'Suits for the recovery of lands or damages thereto, suits to remove incumbrances upon the title to land, suits to quiet the title to land, and suits to prevent or stay waste on lands, must be brought in the county in which the land or a part thereof may lie.'

"It was held in De La Vega v. League, 64 Tex. 205, that this requirement of the statute confers a mere personal privilege, which may be waived, and the judgment of the district court of some other county, whose jurisdiction has been submitted to without objection, will settle the title to the land as effectually as if suit had been brought in the county in which the land is situated. This doctrine was approved in Bonner v. Hearne, 75 Tex. 251, 12 S. W. 38, and has been repeatedly followed. State v. Snyder, 66 Tex. 695, 18 S. W. 106; Willis v. White, 29 S. W. 819; Moody v. Bank, 51 S. W. 525; Dittman v. Iselt, 52 S. W. 96.

"Not denying the authority of these decisions, appellant contends that they have no application to a suit against unknown heirs, cited by publication. In reply to this contention, appellee cites Railroad Co. v. De Berry, 34 Tex. Civ. App. 180, 78 S. W. 737, as conclusive against it. In that case the same judgment as in this was under discussion, but the matter in controversy was one of the land certificates covered by the judgment. None of the cases cited by appellee nor any case we have been able to find, decide the precise question presented. We are of the opinion, however, that the general rule an-

nounced by the authorities, and above stated, applies to this case. The presumption is that the court obeyed the plain command of the statute, and appointed an attorney ad litem to represent the defendants, and they are bound by his waiver of objections to the venue. The assignment must be overruled."

In the case just quoted the Supreme Court denied a writ of error. An inspection of the application shows that the very questions discussed in the quotation just above set out were presented to the Supreme Court. In that case we think the refusal of the writ involved an approval of Judge Reese's said holding. Therefore we hold that the trial court should have admitted the Hardin county judgment in evidence. The judgment may be of great importance. If the jury should find that the deed from Coote to Cahal was a forgery, then the Kelloggs, under the Hardin county judgment, would still be entitled to recover the land in suit, even though the jury found that the deed from Kellogg to Coote was valid. This is true, since the Hardin county judgment was against the heirs of Coote.

[11] We realize, of course, that it has always been the theory of our courts that an attorney appointed by a court in a distant county to represent unknown heirs apparently entitled to land in another portion of the state will work for his unknown client with all the zeal he would exert in behalf of a known client who pays him adequately for his services and is on hand to demand efficient service. It may be this theory has been justified in the main. But, aside from this feature, it is unquestionably true that the chief aim of the law is to bring notice home to all defendants, in person, of the pendency of a suit against them, wherever possible. This is true in service by publication. Our Legislature realized that this notice would more readily and likely reach the eyes of some one interested in land if the same be published in the county where such land is located. Therefore the law expressly requires that citations by publication to unknown heirs must be published in the county where the land is situated. The Legislature knew, of course, that these unknown heirs would more likely live near their property than elsewhere. And, if that be not true, then the notice would be read by others who might bring notice of the suit to the ears of the unknown heirs whom they know and of whose present residence they are advised. We think the most effective remedy against fraud would be to have a statute providing that a judgment against unknown heirs cited by publication shall be absolutely void if recovered in any county other than where the land involved in such suit is located, and that such a statute cannot be waived by an attorney appointed by the court. This law could work no real hardship upon any one, and we respectfully recommend its passage by the Legislature of this state.

If the certificate of the district clerk of Hardin county in the case at bar is true, then the statutes protecting unknown heirs were not followed in any material respect and the heirs of Coote were deprived of their land, not only without due process of law, but apparently without any effort on the part of their attorney to investigate the records of San Augustine county before trial in Hardin county to see whether or not his clients had any title to this land. The difference in effectiveness of the work of counsel employed by the parties themselves and those appointed by the court in many cases is illustrated by what has happened in this very case. In the case at bar the Coote title prevailed against the claim of the very Kellogg heirs who recovered judgment against the Coote title in Hardin county. And yet these Coote heirs are powerless to retrieve their loss in Hardin county except by a direct attack upon the judgment within four years after they should have discovered the fraud, if any. This is, of course, a rather adequate remedy. But it involves tedious litigation and the difficult task of convicting citizens of fraud, sued frequently in their home county. Such a conviction could be had in most cases, we imagine, where the facts prove to be in line with the objections urged by counsel for Chapman against this Hardin county judgment. Still, as already stated, we would be glad to see the Legislature lessen the opportunity for fraud by absolutely requiring suits against unknown heirs to be brought where the land is situated, and forbidding any attorney appointed by the court to waive this provision.

We believe what we have already said disposes of all assignments which will likely arise on another trial and which could involve any difficulty.

Therefore we recommend that the judgments of the district court and Court of Civil Appeals be reversed, and the cause remanded to the former for another trial not inconsistent herewith.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

We approve the holding of the Commission of Appeals on the question discussed in its opinion.