Leo H. FREDE et al., Appellants,

v.

H. D. LAUDERDALE, Appellee.

No. 13423.

Court of Civil Appeals of Texas.

San Antonio.

Feb. 25, 1959.

Rehearing Denied March 25, 1959.

Felix McDonald, Edinburg, C. C. Jopling, LaGrange, for appellants.

L. Hamilton Lowe, Austin, for appellee.

POPE, Justice.

This is a suit for trespass to try title to a seventy-three acre tract of land in Hidalgo County. It originated as an action against Magnolia Petroleum Company for the recovery of royalties which it had impounded. Magnolia impleaded competing claimants to the royalties and title to the land in question, and it is agreed that Magnolia is now merely a stakeholder. After the pleadings were closed, Leo H. Frede, H. A. Frede, Agnes Frede Stolz and husband, L. W. Stolz, Jr., were in the attitude of plaintiffs with the burden to prove title. They will be referred to simply as Frede. H. D. Lauderdale answered by a plea of not guilty and pleas of limitations. The proof was either stipulated or documentary in nature, and after both parties rested the court gave judgment that Frede take nothing, and awarded the royalties and title to the land to Lauderdale.

Melchor Mora was, by agreement, the common source. Frede proved title from the common source by proof of:

1. Deed of trust executed by Mora, as a single person to Jas. H. Anderson, trustee, dated January 30, 1933, and filed for record February 15, 1933.

2. Trustee's deed from Jas. H. Anderson, trustee, to H. Amberg, dated December 3, 1935, and filed for record December 21, 1935.

3. Deed of trust executed by H. Amberg to S. L. Miller, trustee, dated July 30, 1936, and filed for record July 31, 1936.

4. Trustee's deed from S. L. Miller, trustee, to Lee M. Green, dated February 2, 1937, and filed for record Feb. 26, 1937.

5. Special Warranty Deed from Lee M. Green and wife to Leo Frede, dated April 7, 1937, and filed for record April 17, 1937.

6. Oil and gas lease from Frede and wife to Richard King, Jr., dated May 8, 1944, which was assigned to Magnolia Petroleum Company.

7. Devise from Leo Frede to plaintiffs and a deed from Bozena Frede, his wife, to plaintiffs, to the land and royalties involved.

Lauderdale claimed superior title and offered in evidence:

1. Oil and gas lease from Melchor Mora to John C. Jones and S. H. Collier, dated February 10, 1934, and filed for record July 20, 1934.

2. Instrument from H. Amberg, dated September 10, 1934, and filed for record September 13, 1934. The instrument was not acknowledged, but was recorded. Whether it was intended as a release or a subordination of mineral rights under the deed of trust executed by Mora to Jas. H. Anderson, trustee, dated January 30, 1933, is disputed.

3. Lis pendens notice of lawsuit by Melchor Mora and wife against Amberg, Anderson, trustee, and Green, filed October 29, 1937.

4. Judgment in favor of Melchor Mora and wife against H. Amberg, Jas. H. Anderson, trustee, and Lee Green, rendered January 10, 1941, declaring null and void, (1) the deed of trust in plaintiff's chain of title, executed by Mora, a single person to Jas. H. Anderson, trustee; (2) trustee's deed to H. Amberg; (3) the deed of trust by Amberg to S. L. Miller, trustee, and (4) the trustee's deed from Miller, trustee, to Lee M. Green. The judgment awarded title to the lands to Melchor Mora and wife on the grounds that the deed of trust by Mora of January 30, 1933, was void be-

cause it was given on homestead property and his wife did not join in the instrument.

5. Warranty deed from Melchor Mora and wife to Lauderdale dated January 11, 1941, filed for record November 10, 1941.

6. Oil and gas lease from Lauderdale to Richard King, Jr., which was assigned to Magnolia Petroleum Company.

Magnolia held leases from both Frede and Lauderdale and hence, by agreement of the parties, owned the minerals in any event and was a stakeholder. The trial court on the basis of Lauderdale's proof rendered judgment that plaintiff Frede take nothing, for two reasons: (1) The 1941 judgment in favor of Mora and wife destroyed the force of the first link in the Frede chain of title by deciding that it was a deed of trust on homestead property executed by Mora as a single person when he was in fact married. (2) The instrument executed on September 10, 1934, by H. Amberg, who then held a deed of trust to secure his debt, was a release which operated as a severance of the minerals and the minerals were therefore not included in the subsequent foreclosure under the deed of trust.

Lauderdale's reasoning is that the first link in the Frede chain of title was void because the deed of trust was executed by Mora as a single man, when he was in fact a married man and not joined by his wife, and the property was homestead. The only proof that the link is void is the proof of the 1941 judgment. It becomes necessary to determine whether this 1941 judgment is binding upon Frede.

■ The 1941 judgment was not binding upon Frede. Lee M. Green and wife conveyed to Leo Frede on April 7, 1937, who filed the deed for record on April 19, 1937. Six months and twenty-two days later, Mora and wife filed a lis pendens notice that they had filed suit for recovery of the land. In other words, title had already passed to Leo Frede. Leo Frede was never made a party to the lawsuit filed by Mora and wife. Mora and wife sued Amberg, Anderson and Green, who had already parted with title. Amberg and Anderson disclaimed, and Green did not appear at the trial. Judgment was taken against those named persons on January 10, 1941. By that judgment the court held that Mora was in fact married and the property was homestead. Though Frede at the time the suit was filed, at the time the lis pendens was filed, and three years later, at the time the judgment was taken, was the record owner of the property, he was not made a party. In our opinion, a suit brought against a record owner's predecessors in title without joining the record owner is not binding upon the record owner. Otherwise, one could accomplish as much, and more easily, by suing persons who have parted with their property as by suing the record owner. Predecessors in title often have little or no real interest in a suit for lands they no longer claim to own, and, as was true in the instance of the 1941 judgment, may fail to contest the case.

The 1941 judgment concluded nothing against Frede. Kirby Lumber Corporation v. Southern Lumber Co., 145 Tex. 151, 196 S.W.2d 387, 389; Campbell v. McLaughlin, Tex.Com.App., 280 S.W. 189, 191; Richardson v. Reid, Tex.Civ.App., 188 S.W.2d 248; Martin v. Texas Co., Tex. Civ.App., 89 S.W.2d 260. In speaking of the force of a lis pendens notice, the Commission of Appeals has said: "It does not have effect to expand in the slightest degree the general rule, pertaining to the doctrine of res adjudicata, which is to the effect that the judgment in the suit concludes nobody but the parties to the suit and those whose succession to the rights of property therein adjudicated are derived through or under one or the other of the parties to the suit," and then significantly adds, "and which accrued subsequent to the commencement of the suit." Harris Realty Co. v. Austin, Tex.Com.App., 134 Tex. 484, 137 S.W.2d 19, 20. Since the 1941 judg-

ment is not binding upon Frede, homestead was not proved.

Lauderdale contends that even though the trial court may have erred in awarding him the surface estate, still the judgment is correct in awarding him the mineral estate and royalties. The argument is after this manner: Mora in January, 1933, executed a deed of trust to Jas. H. Anderson, trustee, to secure H. Amberg. Lauderdale proved an oil and gas lease from Mora to Jones and Collier, executed on February 10, 1934. Amberg executed an instrument on September 10, 1934, which Lauderdale claims was a release of all mineral rights by Amberg, the beneficiary under the deed of trust from Mora. Frede, on the other hand, insists that it was intended as a subordination agreement. Lauderdale claims that when Amberg executed the instrument, no minerals were thereafter embraced within the deed of trust, and when Amberg later, in December, 1935, took the property by trustee's deed, he obtained only the property embraced within the deed of trust, which did not include the minerals. According to Lauderdale's reasoning, Frede acquired his title through Amberg and therefore he received no minerals. By this reasoning the minerals were free from the deed of trust at the time the deed of trust was foreclosed, and when Mora and wife conveyed to Lauderdale in 1941, they conveyed the minerals. In other words, Lauderdale claims that the instrument signed by Amberg cut the mineral estate entirely loose from the deed of trust, from the subsequent foreclosure and the deed to Amberg. The entire instrument is set forth in the footnote.[1] In our opinion, the instrument was only intended to subordinate Amberg's mortgage to the mineral lease. The instrument is entitled a "subordination", it declares that its purpose is to "subordinate" and it then

1. "H. Amberg to The Public
Subordination of Mortgage to Mineral Lease
State of Texas
County of Fayette
"Personally came and appeared before me, the undersigned Notary Public in and for the said County and State, H. Amberg, a resident of Rutersville, Texas, who declared and acknowledged that for and in consideration of the price and sum of One Dollar cash in hand paid, the receipt of which is hereby expressly acknowledged, and other good and valuable considerations and benefits to be derived herefrom, he has and does by these presents subordinate all of his rights, title and interest and claims, in so far and only in so far as the oil and gas and other minerals and mineral rights and leases are concerned in and to that certain act of mortgage, executed by Melchor Mora, covering the following described property:
"Share No. 2, containing 73.2 acres, awarded to Melchor Mora according to map of subdivision of Share E, out of original Share No. 5 of Las Mestenas Grant, Hidalgo County, Texas, filed on April 20, 1928, and recorded in Book 4, page 48, of Map Records of Hidalgo County, Texas,
said act of mortgage being duly recorded in Volume 122, page 588 of Deed of Trust Records of Hidalgo County, Texas, and having been given to secure one note dated January 30, 193—, in the sum of Eleven Hundred Dollars, due October 26, 1932, with interest at the rate of ten percent from October 26, 1932 until paid, signed by Melchor Mora, payable to H. Amberg. A payment or payments have been made on said note totalling $200.00, leaving a balance due of $900.00, secured by said mortgage aforementioned.
"The said H. Amberg further declared that it is the intention of this act of subordination to place the owner of the mineral rights in said land in the same position in all respects as if the aforesaid mortgage had never been executed.
"In witness whereof these presents are signed before me, and in the presence of the two undersigned competent witnesses on this the 10th day of September, 1934.
"H. Amberg

"J. C. Schuhmacher
".(Seal) Notary Public
"Notary Public County of Fayette, Tex.
"Filed for record this 13 day of Sept. 1934 at 2:51 o'clock P.M.
"F. W. Lemburg, Clerk County Court,
"Hidalgo County, Texas
"Recorded this 14th day of Sept. A.D. 1934 at 10:00 o'clock A.M.
"F. W. Lemburg, County Clerk."

specifically declares that it is intended by the "subordination to place the owner of, the mineral rights in said land in the same position in all respects as if the aforesaid mortgage had never been executed." At that time, the oil and gas lease from Mora to Jones and Collier was of record, and by the record they owned the mineral rights. The instrument declared that Amberg's rights were subordinate to the rights of those who owned the mineral rights. If, for some reason, Jones & Collier had surrendered their mineral rights back to Mora, there is nothing in the instrument to indicate that Amberg intended to give up his mortgage rights with respect to anybody except those who owned the mineral rights. The instrument means that Amberg recognized that the rights of the mineral owner would come ahead of his, but after those rights are satisfied then his rights exist.

■ The instrument was not properly admitted in evidence, in any event, and upon Frede's objection should have been excluded. The instrument was not acknowledged, but, in spite of this, it was recorded on September 14, 1934. An unacknowledged instrument which is recorded is ordinarily not properly admitted in evidence. Lauderdale relied upon a stipulation by the parties as the reason for its admissibility. In advance of trial, they agreed that they "may offer in evidence upon the trial of this case, any instruments recorded in the Office of the County Clerk of Hidalgo County," but both parties, in the same instrument, also agreed to "reserve the right to make any legal objections that they may deem applicable to any particular instrument or instruments that may be offered in evidence, but do hereby specifically waive the filing of the original or certified copies of any instruments of record in Hidalgo County." Such stipulations do not mean that the parties agree that an instrument is properly recorded or that it is proper evidence. Such agreements merely mean that the parties are excused from filing the originals or copies of the instrument. The parties reserved the right to object to the

evidence and to each instrument. Frede objected to the instrument because it was an unacknowledged instrument which was not entitled to be recorded at all. That objection was good and should have been sustained unless Lauderdale proved that the instrument falls within the exception stated in Art. 3726, Vernon's Ann.Civ.Stats. By that statute, an instrument which has actually been of record for ten years, though not acknowledged may be admitted in evidence, provided no claim adverse or inconsistent to the one evidenced by the instrument has been asserted during that ten-year period.

■ The record shows that there were claims adverse to and inconsistent with the instrument within the ten-year period. After Amberg executed the instrument there was a foreclosure and Amberg took the property with no mineral reservation. He in turn gave a deed of trust, and the property was again foreclosed and conveyed by the trustee to Lee Green. Green conveyed to Leo Frede. Frede and wife, within the ten-year period, conveyed the same mineral estate to Richard King, Jr. These were claims adverse to and inconsistent with the unacknowledged instrument. Hence, the exception which would permit the unacknowledged instrument to be proved in evidence does not exist, and the instrument should not have been admitted in evidence at all. Chapman v. Kellogg, Tex.Com.App., 252 S.W. 151; Rule v. Richards, Tex.Civ.App., 149 S.W. 1073, 1074; Tex.Civ.App., 159 S.W. 386; 36 Tex. Jur., Records and Registration Acts, § 122.

Lauderdale did not destroy Frede's title by proof of the 1941 judgment, since it was ineffective as to Frede; and Lauderdale did not prove that the instrument by Amberg was a release of the minerals which, therefore, failed to pass when the deed of trust was foreclosed.

The judgment is accordingly reversed and rendered that Frede recover the royalties in suit and the title to the land.